735 S.E.2d 274

**In re AARON H.**

**No. 11–1394.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 25, 2012.

Decided Nov. 9, 2012.

John E. Williams, Esq., Princeton, WV, for Petitioner.

Darrell V. McGraw, Jr., Attorney General, William L. Bands, Assistant Attorney General, Charleston, WV, for Respondent.

Julie Lynch, Esq., Child Law Services, Princeton, WV, Guardian ad litem for Aaron H.

PER CURIAM:

This is an appeal by the petitioner Robert H.[1] from an order of the Circuit Court of Mercer County placing his grandson, Aaron H. Jr., a child under the age of 18 years, in the home of his foster parents, Alice N. and Gerald N., for the purpose of adoption. The petitioner contends that he should have been considered as an adoptive placement for Aaron H. Jr. For the reasons discussed herein, we affirm the ruling of the Circuit Court of Mercer County that ordered that the child be placed for adoption in the home of the foster parents.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Aaron H. Jr., born December 7, 2007, is the biological child of Jennifer J. and Aaron H. Aaron H. Jr. was the subject of a petition filed in the Circuit Court of Mercer County by the Department of Health and Human Resources (hereinafter "the Department") alleging that he was an abused and/or neglected child. At that time Aaron H. was in the custody of neither biological parent, but instead, with a woman named Diana R. The initial petition alleged that the child had suffered from physical abuse, that his caregiver Diana R. had failed to obtain medical treatment for him and had engaged in other neglectful behaviors. The petition was later amended to include the child's biological parents, Aaron H. and Jennifer J., as respondents. Aaron H. was incarcerated in another state during all times pertinent to this proceeding. The allegations against Jennifer J. included a prior court proceeding in which she lost custody of two other children born prior to Aaron H.

During the course of the proceeding giving rise to this appeal, Diana R. voluntarily relinquished any rights she had to the custody of Aaron H. While she participated in an improvement period, the child's mother, Jennifer J., ultimately voluntarily relinquished her parental rights to the child. The circuit court terminated Aaron H.'s parental rights.

The child has resided in the home of his foster parents, Alice N. and Gerald N., since the filing of the initial petition. At the time initial petition was filed, the child was approximately 18 months old. At the time of the permanency hearing the child was almost four years old and is now almost five years of age. The foster parents have long expressed their desire to adopt Aaron H.

Robert H. (hereinafter "petitioner") is the paternal grandfather of Aaron H. Jr. His involvement in the instant proceedings began well after the initial petition was filed and was limited to being considered as a possible adoptive home for Aaron H. Jr. once the parental rights of Jennifer J. and Aaron H. were terminated. The petitioner did not have a relationship with Aaron H. Jr. prior to the abuse and neglect proceeding.[2] The circuit court reviewed the request and ordered

---

1. As is our practice in cases involving sensitive matters, we use initials to identify the parties' last names. *See In re Scottie D.,* 185 W.Va. 191, 406 S.E.2d 214 (1991).

2. The petitioner had visited only once with the child, in April of 2011.

that a home study be performed on the home of Robert H. in recognition of the statutory preference for relative adoptions contained in W. Va.Code § 49–3–1 (2007). At the time of the entry of the order granting the petitioner a home study, he was staying with his sister in Indiana. The Department implemented the provisions of the Interstate Compact for the Placement of Children (hereinafter "the Compact") and requested that the State of Indiana perform a home study of the residence of Robert H. This request was received by Indiana in February of 2011. The child remained in the care of his foster parents.

The sole issue before the circuit court was the permanent placement of Aaron H. Jr. At the permanency hearing before the circuit court, Megan Shell, a foster care specialist from the State of Indiana, testified about her work on the home study. She testified that the State of Indiana has a strict 60–day time period in which to complete a home study requested through the Compact. She first met with the petitioner on March 4, 2011. At that time the petitioner was asked to complete some paperwork and to gather up documents, including copies of his birth certificate, driver's license, marriage and divorce records and other items. These documents were received sometime toward the end of April, which would have been after the end of the 60–day time period in which the report had to be completed. Ms. Shell testified that the petitioner was told of the need for expediency in returning these documents, as well of the time constraints.

Ms. Shell also testified that while the home study was pending, the petitioner changed his mind about where he wanted to live. While he was residing in the home of his sister in Indiana, he contemplated living in an apartment in Kentucky. He later changed his mind about that. As a result of the petitioner's varying residential intentions, Ms. Shell was never able to visit any home of the petitioner because by the time the petitioner completed and returned the initial paperwork, the 60–day period for completion of the home study had elapsed. Ms. Shell then sent to the Department a letter indicating that the petitioner had not successfully completed his home study but that additional time could be requested by West Virginia by submitting another request. No follow-up request was ever received by the State of Indiana.

Also testifying at the permanency hearing was a representative from the Department who had received the correspondence from Indiana regarding the petitioner's home study. This representative, Chris Bell, testified that he received a four-page facsimile transmission (hereinafter "fax") from Indiana about this home study. On the first page of the fax was a section that contained three possible choices for the home study: under consideration, approved or denied. The fax from Indiana was marked "denied." Based upon his review of only the first page of the fax, Mr. Bell stated that he recommended that Aaron H. be adopted by his foster parents. Some time elapsed before Mr. Bell read the remainder of the fax, which included information that the home study was denied because there was not any more time in which to complete the evaluation after 60 days passed. He likewise did not request additional time in which to allow Indiana to complete the home study. At the hearing, Mr. Bell testified that he "saw no point in delaying permanency for this child."

The petitioner testified at the permanency hearing about the difficulties he had in complying with the requests of Indiana regarding documentation of life events. He stated that divorce records were available in Indianapolis, but because the divorce records were older, they were only available on microfilm. He testified that he would have had to take a bus to Indianapolis to retrieve those records. Likewise, retrieving records regarding his arrest, which happened decades ago, was impossible because the records had been destroyed.

At the conclusion of the permanency hearing, the circuit court granted the request of the Department to place Aaron H. Jr. in the home of his foster parents, Alice and Gerald N. The circuit court found that the petitioner did not successfully complete his home study, and thus, was not a suitable placement for the child. The circuit court found that the actions of the Department were "appalling"

in that it had not requested additional time in which to complete the petitioner's home study, but further found that Aaron H. Jr. had lived two-thirds of his young life with his foster parents and that it was not in his best interests to be removed from that household.

The petitioner filed the instant appeal, seeking to be named as the adoptive home for Aaron H. Jr.

## II.

## STANDARD OF REVIEW

 The issue presented in this appeal focuses on the preference afforded grandparents to adopt their grandchildren after the parental rights of the grandchildren have been terminated through an abuse and neglect proceeding pursuant to W. Va.Code 49–6–1 (2007). Our standard of review in abuse and neglect matters is as follows:

Although conclusions of law reached by a circuit court are subject to a de novo review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirely.

Syllabus point 1, *In the Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

With this standard in mind we proceed to the merits of the petitioner's appeal.

## III.

## ANALYSIS

As noted, the sole issue before this Court in this abuse and neglect proceeding is whether, with respect to the permanent placement of the child, the circuit court erred in placing the child with his foster parents for adoption rather than with his grandfather in view of the statutory preference for grandparent placement contained in W. Va.Code 49–3–1 (2007).[3] The grandparent preference statute states,

[f]or purposes of any placement of a child for adoption by the department, the department shall first consider the suitability and willingness of any known grandparent or grandparents to adopt the child. Once any such grandparents who are interested in adopting the child have been identified, the department shall conduct a home study evaluation, including home visits and individual interviews by a licensed social worker. If the department determines, based upon the home study evaluation, that the grandparents would be suitable adoptive parents, it shall assure that the grandparents are offered the placement of the child prior to the consideration of any other prospective adoptive parents.

 This Court has previously addressed this statutory preference in the case of *In re Napoleon S.*, 217 W.Va. 254, 617 S.E.2d 801 (2005). We held that placement with a grandparent of a child whose parents' parental rights have been terminated is presumptively in the best interests of that child. Therein, we held,

West Virginia Code § 49–3–1(a) provides for grandparent preference in determining adoptive placement for a child whose parental rights have been terminated and also incorporates a best interests analysis within that determination by including the

---

**3.** The grandparent preference is also contained in the Department's internal regulations, specifically DHHR Adoption Policy § 7.3, which states, in part, that a grandparent or an adult relative with a positive home study certifying the home adoption must be given preference over the non-

relative home even if the non-relative home has the appearance of a better placement choice. This policy is more fully discussed in *Kristopher O. v. Mazzone*, 227 W.Va. 184, 706 S.E.2d 381 (2011).

**682**

requirement that the DHHR find that the grandparents would be suitable adoptive parents prior to granting custody to the grandparents. The statute contemplates that placement with grandparents is presumptively in the best interests of the child, and the preference for grandparent placement may be overcome only where the record reviewed in its entirety establishes that such placement is not in the best interests of the child.

Syl. pt. 4, *Napoleon S. v. Walker*, 217 W.Va. 254, 617 S.E.2d 801 (2005). Such a preference, however, necessarily implies that the home of the prospective adoptive grandparent be a fit and suitable one.

By specifying in W. Va.Code § 49–3–1(a)(3) that the home study must show that the grandparents "would be suitable adoptive parents," the Legislature has implicitly included the requirement for an analysis by the Department of Health and Human Resources and circuit courts of the best interests of the child, given all circumstances.

*Id.* at Syl. pt. 5.

In the recent case of *In re Elizabeth F.*, 225 W.Va. 780, 696 S.E.2d 296 (2010), we recently addressed whether the grandparent preference creates an absolute or unrebuttable presumption. In that case, the children were placed in the adoptive home of their maternal grandmother, despite some issues with the grandmother's home. The circuit court approved the placement of Elizabeth F. and her sister in this grandmother's home, but noted its hesitation in the order when it stated that "[a]bsent the grandparent preference, the Court doubts that his decision would be the same." *Id.* at 786, 696 S.E.2d at 300. This Court reversed the circuit court, reiterating that the best interests the child must always be considered. We stated that

[o]ur prior holdings in *Napoleon* are critically important insofar as we explicitly recognized that a crucial component of the grandparent preference is that the adoptive placement of the subject child with his/her grandparents must serve the child's best interests. Absent such a find-

ing, adoptive placement with the child's grandparents is not proper.

*Id.* Therefore, the grandparent preference must be tempered by a court's consideration of the child's best interests. If on balance, the grandparent placement fails to serve the best interests of the child, the child may be placed elsewhere. We believe this is one such case.

■ Reviewing the entire record, we find that the current case does not turn simply on whether there was an unsuccessfully completed home study caused by the Department's failure to read through a fax. There is more. First, we simply cannot ignore the lack of contact between the petitioner and his grandchild, both prior to the child coming into the Department's custody and during the pendency of this proceeding. Furthermore, responsibility for the inability of Indiana to complete the petitioner's home study must be borne in part by the petitioner. While he may have had difficulty in obtaining certain records, the petitioner never stated with sufficient specificity where it was that he intended to reside with the child. Without a specific address, there was no way for anyone to visit the intended home. In addition, there was sufficient evidence that the petitioner's seeming transient nature, all while awaiting a home study, supported the perception of the Department that the petitioner did not successfully complete his home study. Finally, the petitioner himself did not request an extension of time in which to complete the report, even after the time considerations were explained to him by the Indiana social workers.

While we believe that the petitioner is sincere in his desire to undertake the responsibility for raising his grandson, which is commendable, we cannot ignore the totality of the record. The circuit court weighed all of these factors, and while it found fault with the Department for not reading through all of the fax from Indiana, it ultimately weighed all of the factors in consideration of the child's best interests and found that such interests would not be furthered by an adoption by the petitioner. We find no error in the circuit court's reasoning or conclusions.

## IV.

### CONCLUSION

While the failure of the Department to ensure that the petitioner received a completed home study is problematic, we cannot conclude that the circuit court erred in approving the adoption of Aaron H. Jr. by his foster parents. The circuit court's decision was not based solely on the lack of a completed home study but on other factors, including the length and quality of time the child has lived in the home of Alice and Gerald N. For the foregoing reasons, the September 28, 2011, order of the Circuit Court of Mercer County is hereby affirmed.

Affirmed.