# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**In Re: M.W.**

**No. 14-0633** (Wood County 12-JA-56)

**FILED**

November 24, 2014

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioners, who are M.W.'s paternal grandparents, by counsel Jessica E. Myers, appeal the order of the Circuit Court of Wood County, entered on February 18, 2014, that permanently placed four-year-old M.W., with his foster mother for adoption. The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee A. Niezgoda, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Rhonda L. Harsh, filed a response on M.W.'s behalf that also supports the circuit court's order. The foster mother, by counsel Aaron C. Boone, also filed a response in support of the circuit court's order. On appeal, petitioners allege error in the circuit court's findings and conclusions as to M.W.'s best interests, application of placement preference, and sibling separation.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On April 10, 2012, the DHHR filed an abuse and neglect petition in Wood County against M.W.'s biological parents. The petition alleged that the parents' abused and neglected M.W. and his two older siblings, B.W., who was fourteen years old, and T.W., who was eleven years old, due to the parents' substance abuse and neglect of the children's basic needs, such as shelter, clothing, and food. The DHHR immediately placed all three children in foster care, which required sibling separation.[1]

Shortly after the filing of the petition, on approximately April 11, 2012, the DHHR contacted petitioners, who resided in the State of North Carolina, to pursue family placement. Pursuant to the Interstate Compact on the Placement of Children ("ICPC"), the children could not be placed with petitioners until a home study was approved by the appropriate North Carolina authorities ("North Carolina"). The DHHR submitted an ICPC home study request on April 20, 2012. On the same date, the DHHR relocated M.W. from his initial emergency placement to the foster home at issue herein. North Carolina dismissed the request due to a lack

---

[1] The DHHR later explained that the children had no family or friends in West Virginia, and it could not locate one foster home for all three children.

1

of necessary information.[2] For reasons not fully explained in the record before this Court, a second ICPC home study request was not completed until May of 2013. North Carolina approved petitioners' home on June 27, 2013. However, by that time, M.W. had resided with his foster mother for well over one year. Due to that length of time and the bond that developed between his foster mother and M.W., the DHHR expressed concerns that it would not be in M.W.'s best interests to move him into petitioners' home.

In May of 2013, the biological father relinquished his parental rights to the children, and in June of 2013, the circuit court terminated the mother's parental rights to the children. On December 20, 2013, and April 14, 2014, respectively, the circuit court placed both of M.W's older siblings with petitioners in North Carolina. M.W. remained in his foster placement.

The circuit court held a final hearing on M.W.'s permanent placement over the course of two days, on April 14, 2014, and May 5, 2014. Petitioner-grandmother and petitioner-grandfather's brother testified to the appropriateness of petitioners' home and M.W.'s future with petitioners and his siblings if permitted to remain with the foster mother. Two service providers, two CPS workers, a CASA volunteer, M.W.'s pre-school teacher, the foster mother, and the oldest sibling testified that M.W. should remain with the foster mother to avoid (1) the harm of removal from the home he had known for the previous two years and (2) the adjustment to a new home with petitioners. Several witnesses also testified to concerns about petitioners' abilities to take care of M.W. in their home. Those concerns related to petitioners' age, health, allegations of physical and substance abuse, and a threat made against M.W. by his older brother, who lived with petitioners.[3] Bradley Gault, licensed child psychologist with Try Again Homes, also testified. According to the psychologist, M.W. and the foster mother shared a strong bond. He testified that it could be harmful to M.W. to remove him from the foster home due to his background and the length of time he had resided there. In his opinion, the transfer of placement would be a "gamble" for M.W.'s well-being. Further, he testified that even if petitioners provided M.W. a perfect home, the removal and transition itself could still do harm. The circuit court entered an order permanently placing M.W. with the foster mother for purposes of adoption by her. The circuit court ruled in a detailed, twenty-six-page order that it was in M.W.'s best interests to remain with his foster mother due to the bond between them and the concerns over petitioners' ability to parent an infant. The circuit court also concluded that sibling separation was warranted for M.W.'s best interests. This appeal followed.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a

---

[2]The date on which North Carolina dismissed this request is unclear from the record before this Court.

[3]The full context of this threat is unclear from the record on appeal.

reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In the Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioners first argue that the circuit court erred in failing to apply the grandparent preference and in finding that placement with petitioners was not in M.W.'s best interests.[4] Petitioners claim the circuit court, pursuant to West Virginia Code § 49-3-1(a), should have placed M.W. with petitioners, as paternal grandparents, because they passed the requisite home study. Petitioners further assert that the evidence fails to support the finding that it was not in M.W.'s best interests to be placed in their home, as they are fully appropriate and are his biological family. Upon our review, this Court finds no error in the circuit court's order denying placement with petitioners.

This Court has been clear that the preference for placing children with grandparents remains subordinate to the best interests analysis. We have held as follows:

West Virginia Code § 49-3-1(a) provides for grandparent preference in determining adoptive placement for a child where parental rights have been terminated and also incorporates a best interests analysis within that determination by including the requirement that the DHHR find that the grandparents would be suitable adoptive parents prior to granting custody to the grandparents. The statute contemplates that placement with grandparents is presumptively in the best interests of the child, and the preference for grandparent placement may be overcome only where the record reviewed in its entirety establishes that such placement is not in the best interests of the child.

By specifying in W.Va. Code § 49-3-1(a)(3) that the home study must show that the grandparents "would be suitable adoptive parents," the Legislature has implicitly included the requirement for an analysis by the Department of

---

[4]Petitioners also take issue with the lack of timely completion of the ICPC home study. North Carolina dismissed the first ICPC home study request due to incomplete information. Thus, the DHHR had to complete a second home study request. North Carolina approved the second home study over a year after the DHHR placed M.W. with the foster mother. Petitioners argue that if the home study had been completed earlier, M.W. may have been placed with petitioners long before any bond existed between M.W. and the foster mother. Although the timing of the ICPC home study disturbs the Court, the issue has no bearing on the resolution of this appeal.

Health and Human Resources and circuit courts of the best interests of the child, given all circumstances of the case.

Syl. Pts. 4 & 5, *Napoleon S. v. Walker*, 217 W.Va. 254, 617 S.E.2d 801 (2005); *see also In re Aaron H.*, 229 W.Va. 677, 735 S.E.2d 274 (2012) (Affirming circuit court order that placed child with foster parent over grandparent based upon the child's best interests.); *In re Hunter*, 227 W.Va. 699, 715 S.E.2d 397 (2011) (The grandparent preference must be considered in conjunction with our long standing jurisprudence that "the primary goal in cases involving abuse and neglect . . . must be the health and welfare of the children." (internal citations omitted)); *In re Elizabeth F.*, 225 W.Va. 780, 696 S.E.2d 296 (2010) (Holding that the grandparent preference must be tempered by a court's consideration of the child's best interests.).

Moreover, we have previously held that

"[o]nce a court exercising proper jurisdiction has made a determination upon sufficient proof that a child has been neglected and his natural parents were so derelict in their duties as to be unfit, the welfare of the infant is the polar star by which the discretion of the court is to be guided in making its award of legal custody." Syllabus point 8, in part, *In re Willis*, 157 W.Va. 225, 207 S.E.2d 129 (1973).

Syl. Pt. 4, *In re Elizabeth F.*, 225 W.Va. 780, 696 S.E.2d 296 (2010).

In this case, the circuit court properly weighed the available evidence in reaching its determination. The evidence established that M.W.'s best interests are to remain in his current placement. He spent the first approximately two years of his life in transition, often moving from place to place with the parents. As one DHHR worker characterized it, M.W. "grew up in basically [a series of] homeless shelters." At the age of two, almost immediately following his removal from his parents in April of 2012, M.W. was placed with his foster mother. He has continuously resided with her throughout these proceedings. He is now said to be "very stable" and "very bonded" to his foster mother. The overwhelming evidence presented to the circuit court supports the finding that M.W.'s best interests are to remain in that placement.

Two CPS workers, two service providers, and an expert in child psychology testified that M.W. could be harmed by the move to petitioners' home. Petitioners attempt to undermine the child psychologist's credibility by arguing that he did not meet with petitioners or the siblings before rendering a decision. However, the child psychologist testified that even if M.W. were relocated to a "perfect home," the sense of abandonment by the foster mother he would experience could still harm him. To underscore the reality that a new placement could cause harm, his oldest sibling even testified that it was "rough" on her to make the transition to petitioners' home, and she was sixteen years old at that time. M.W. is four years old. The sibling concluded that if relocating to petitioners' home would harm M.W., then he should remain with the foster mother.

While we believe that petitioners are sincere in their desire to undertake the responsibility of raising M.W., which is commendable, we cannot ignore the totality of the record. Further,

4

relative placements are not necessarily in a child's best interests. We note, too, that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.,* 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997). The circuit court ultimately weighed all of the factors in consideration of the child's best interests and found that such interests would be better served by an adoption by the foster mother. The circuit court was in the best position to weigh witness credibility, and we find no error in the circuit court's determination that it was in M.W.'s best interests to remain with his foster mother. For these reasons, we find no error in the circuit court denying placement of M.W. in petitioners' home.

Next, petitioners argue that the circuit court erred in ordering sibling separation. Petitioners assert that the circuit court erred in (a) failing to apply the sibling preference; (b) finding that sibling separation was in the child's best interests; (c) separating the siblings; and (d) failing to make the adequate findings of fact and conclusions of law to separate the siblings.[5] We, again, find no error in the circuit court's rulings. While the majority of petitioners' argument focused on sibling separation prior to the circuit court's final order, to which no objections appear in the record, petitioners do claim that the evidence does not support the permanent sibling separation ordered at the conclusion of the hearings at which petitioners asserted the claim. We disagree. Although the law prefers sibling unity, we have explained that sibling unity does not outweigh a child's best interests. We have held that

> W.Va. Code § 49-2-14(e) (1995) provides for a "sibling preference" wherein the West Virginia Department of Health and Human Resources is to place a child who is in the department's custody with the foster or adoptive parent(s) of the child's sibling or siblings, where the foster or adoptive parents seek the care and custody of the child, and the department determines (1) the fitness of the persons seeking to enter into a foster care or adoption arrangement which would unite or reunite the siblings, *and* (2) placement of the child with his or her siblings is in the best interests of the children. In any proceeding brought by the department to maintain separation of siblings, such separation may be ordered

---

[5]Petitioners argue two assignments of error with regards to sibling separation. As the issues are similar, we address them together. We also note that none of the parties raised below or on appeal the issue of sibling visitation. The record indicates that visits between the siblings currently occur without issue, and the circuit court appears to have indicated its intent to permit continued visitation. However, should sibling visitation cease or the parties desire further resolution of the issue, it may become necessary to resolve this issue further before the court, as allowed by law. *See Honaker v. Burnside*, 182 W.Va. 448, 388 S.E.2d 322 (1989) ("The best interests of the child concept with regard to visitation emerges from the reality that '[t]he modern child is considered a person, not a sub-person over whom the parent has an absolute and irrevocable possessory right. The child has rights. . . .'"); *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991) ("In cases where there is a termination of parental rights, the circuit court should consider whether continued association with siblings in other placements is in the child's best interests, and if such continued association is in such child's best interests, the court should enter an appropriate order to preserve the rights of siblings to continued contact.").

only if the circuit court determines that clear and convincing evidence supports the department's determination. Upon review by the circuit court of the department's determination to unite a child with his or her siblings, such determination shall be disregarded *only* where the circuit court finds, by clear and convincing evidence, that the persons with whom the department seeks to place the child are unfit *or* that placement of the child with his or her siblings is not in the best interests of one or all of the children.

Syl. Pt. 4, *In re Carol B*., 209 W.Va. 658, 550 S.E.2d 636 (2001).

In the case at bar, the circuit court found that M.W.'s best interests required sibling separation. As discussed above, ample evidence clearly and convincingly supported the finding that remaining with his foster mother, with whom he shared a strong bond, served his best interests. We note, too, that the foster mother stated that she could not house all three children. Further, M.W.'s siblings are considerably older than he; his older sister testified that if harm would come from his relocation, which was difficult for her, M.W. should remain with his foster mother; and M.W.'s older brother, who resided with petitioners, had once threatened to kill him. The circuit court concluded that M.W.'s best interests were to remain with his foster mother. We do not find error in this ruling. Therefore, the circuit court did not err (a) in applying the sibling preference; (b) finding that sibling separation was necessary for M.W.'s best interests; (c) separating the siblings; or (d) in its finding of fact and conclusions of law on the issue.

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 18, 2014, permanent placement order is hereby affirmed.

Affirmed.

**ISSUED**: November 24, 2014

**CONCURRED IN BY**:

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II