# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**In Re: Z.O.**

**No. 15-0079** (Monroe County 13-JA-02)

**FILED**

October 20, 2015

**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

# MEMORANDUM DECISION

Pro se Petitioner Maternal Grandmother N.O. appeals the Circuit Court of Monroe County's December 29, 2014, order denying her permanent placement of two-year-old Z.O.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed its response in support of the circuit court's order. The guardian ad litem, John C. Anderson II, filed a response on behalf of the child in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner alleges that the circuit court erred in denying her access to court proceedings and court records and in denying her permanent placement of the child.[2]

---

[1]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below.

[2]On appeal petitioner alleges seventeen other assignments of error in her petition for appeal. However, in her argument in support of these additional assignments of error, petitioner does not cite to relevant case law, statutes, rules, or other authorities to support her arguments. Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that

> [t]he brief must contain an argument exhibiting clearly the points of fact and *law presented*, the standard of review applicable, and *citing the authorities relied on* . . . [and] must contain appropriate and specific citations to the record on appeal[.] The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

(emphasis added). Additionally, in an Administrative Order entered December 10, 2012, *Re: Filings That Do Not Comply With the Rules of Appellate Procedure*, then-Chief Justice Menis E. Ketchum specifically noted in paragraph two that "[b]riefs that lack citation of authority [or] fail to structure an argument applying applicable law" are not in compliance with this Court's rules. Further, "[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented and do not 'contain appropriate and specific citations to the . . . record on appeal . . .' as required by rule 10(c)(7)" are not in compliance with this Court's rules. Here, petitioner's brief is inadequate as it fails to comply with the administrative order and the West Virginia Rules of Appellate Procedure. Thus, we decline to address petitioner's assignments of error as they were not properly developed on appeal.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2013, the DHHR filed an abuse and neglect petition against the child's mother, M.O., alleging that she failed to appropriately care for the child. Specifically, the DHHR alleged that M.O. stuffed then-two-month-old Z.O. in a backpack without appropriate clothing, zipped him completely inside the backpack, and carried him around in below freezing temperatures. The circuit court granted the DHHR immediate custody of Z.O. and placed him in foster care. Thereafter, M.O. waived her right to a preliminary hearing.

In July of 2013, the circuit court adjudicated Z.O. as a neglected child due to "being carried in a backpack without sufficient clothing . . . and electronic cords being placed around the child" and because M.O. failed to acknowledge that this jeopardized Z.O.'s safety. The circuit court granted M.O. services including parenting and adult life skills classes.

In September of 2013, the circuit court held a dispositional hearing. M.O.'s service provider testified that M.O. swung the child in the air, threatened to throw items, attempted to add supplements to the child's bottle such as Splenda or honey during visitations, and became irritated when service workers tried to correct her parenting skills. The circuit court was also presented with evidence that M.O. refused to accept treatment for her psychotic disorder. Given this evidence, the circuit court concluded that M.O. failed to acknowledge that the conduct underlying the filing of the petition was neglectful, failed to implement skills learned during parenting and life skills classes, and refused appropriate mental health treatment. Based on these conclusions, the circuit court found that M.O. could not substantially correct the conditions of neglect in the near future and that termination was necessary for the child's welfare. Accordingly, the circuit court terminated M.O.'s parental rights.[3]

Thereafter, the circuit court adjudicated Z.O.'s putative father as a neglectful parent and ultimately terminated his parental rights. On April 22, 2014, approximately one year after the underlying petition was filed, petitioner, pro se, filed a motion to intervene. Three days later, petitioner, by counsel filed an amended motion to intervene seeking permanent placement of Z.O. Z.O.'s second cousin, J.A. also filed a motion to intervene seeking permanent placement of Z.O. By order entered June 9, 2014, the circuit court granted petitioner's and J.A.'s motions to intervene. The following month, petitioner filed a motion to adopt Z.O.

In July of 2014, the circuit court held an evidentiary hearing regarding the appropriate adoptive placement of Z.O. Upon agreement of the parties, the circuit court continued the hearing on petitioner's motion to adopt the child to allow for additional discovery on the

---

[3]M.O. died in petitioner's home in December of 2013.

appropriate placement of Z.O. The circuit court also granted the child's foster parents' motion to intervene.

The circuit court held a permanent placement hearing on September 4, 2014. The home study provider testified that she received a referral to conduct a home study on petitioner's home on June 23, 2014. The provider testified that she was unable to complete petitioner's home study prior to the September hearing because petitioner failed to provide her with the names and contact information of two references and failed to furnish a copy of her physical examination which was essential to complete the home study. Furthermore, the circuit court ordered petitioner to undergo a psychological examination to determine the proper permanent placement of Z.O. The circuit court held a brief recess while the parties coordinated petitioner's psychological evaluation. Ultimately, petitioner's psychological evaluation was scheduled for September 24, 2014, to which she agreed to attend. Importantly, the circuit court warned petitioner that "if for some reason you come back and they tell me you didn't go in for your evaluation or you didn't do this or you didn't do that, it's going to negatively impact this case.[.]"

Thereafter, the circuit court held another permanency placement hearing on October 21, 2014. Again, petitioner's home study provider testified that petitioner failed to supply her with two references as part of the home study. A DHHR worker testified that despite notifying petitioner that her psychological evaluation was rescheduled until October 2, 2014, petitioner failed to appear for the evaluation.[4] The DHHR worker also testified that petitioner's home study could not be completed because petitioner failed to provide proper references and failed to submit to a psychological evaluation. Importantly, petitioner testified that she received notice that her psychological evaluation was rescheduled until October 2, 2014, and willfully chose not to participate in the evaluation because based upon her independent legal research she determined that she was not required to submit to a psychological evaluation. Based upon the evidence presented, the circuit court found that the DHHR was unable to complete petitioner's home study and that the psychological evaluation was not conducted, both due to petitioner's noncompliance. Furthermore, the circuit court found that petitioner was not entitled to any additional continuances because it was improper to further delay the child's permanent placement and that it was in the child's best interests to be adopted by his foster parents. By order entered December 29, 2014, the circuit court denied petitioner's motion to amend the permanency plan. It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire

---

[4]The psychologist had to reschedule petitioner's September 24, 2014, evaluation due to an illness.

evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the circuit court's order denying petitioner permanent placement of Z.O. or that she was denied access to court proceedings or court records.

To begin, petitioner argues that she was denied access to court proceedings and court records. In support of her assertion, petitioner claims that the circuit court conducted secret hearings and denied her proper access to the circuit court file. This Court finds no merit to petitioner's argument. Here, petitioner attended a multidisciplinary team meeting on July 12, 2013, and a hearing on September 16, 2013. Furthermore, the circuit court granted petitioner's motion to intervene in June of 2014, after which she was represented by counsel and participated in several hearings. Moreover, petitioner testified that she "appeared at every hearing" since the inception of the underlying abuse and neglect proceeding despite not being a party to the action. Finally, the record is devoid of any evidence that petitioner was denied access to the appropriate circuit court file after her motion to intervene was properly granted. As such, we find no error in this regard.

Petitioner also argues that the circuit court erred in denying her permanent placement of Z.O. Petitioner cites to the statutory preference for placing children with grandparents, as found in West Virginia Code § 49-3-1(a)(3), which provides, in pertinent part, that "[i]f the [DHHR] determines, based on the home study evaluation, that the grandparents would be suitable adoptive parents, it shall assure that the grandparents are offered the placement of the child prior to the consideration of any other prospective adoptive parents."

This code section clearly requires a positive home study in order for a grandparent to be considered as a placement option for a grandchild. This is in keeping with our prior holdings concerning children's best interest in custody matters, and we have specifically stated that

> "[b]y specifying in W.Va. Code § 49–3–1(a)(3) that the home study must show that the grandparents 'would be suitable adoptive parents,' the Legislature has implicitly included the requirement for an analysis by the Department of Health and Human Resources and circuit courts of the best interests of the child, given all circumstances." Syl. pt. 5, *Napoleon S. v. Walker*, 217 W.Va. 254, 617 S.E.2d 801 (2005).

Syl. Pt. 3, *In re Aaron H.*, 229 W.Va. 677, 735 S.E.2d 274 (2012). But as described above, petitioner failed to avail the requisite information for the home study and willfully refused to appear for a psychological evaluation, thus failing to satisfy the requirements to be considered as a suitable placement for Z.O. Petitioner was thus precluded from consideration as a placement option.

Furthermore, "in a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided." *In re Antonio R.A.,* 228 W.Va. 380, 388, 719 S.E.2d 850, 858 (2011) (internal citations omitted). The evidence established that placement in petitioner's home was not in the best interests of Z.O. Petitioner failed to acknowledge that M.O. abused Z.O., and testified that she intended to move with Z.O. to North Carolina to be closer to Z.O.'s grandfather who, according to petitioner, had his parental rights previously terminated to his own children. The circuit court also considered the strong emotional bond between Z.O. and his foster family who has cared for him since he was approximately nine weeks old. For these reasons, it is clear that the circuit court did not err in finding that permanent placement in petitioner's home was not in the child's best interest and did not err in denying that request.

For the foregoing reasons, we find no error in the decision of the circuit court and its December 29, 2014, order is hereby affirmed.

Affirmed.

**ISSUED**: October 20, 2015

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II