STATE OF WEST VIRGINIA

*In re*: B.W. and R.B.

**No. 17-0303** (Braxton County 15-JA-49 & 15-JA-51)

**FILED**

**September 25, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioners J.W. and D.W., paternal grandparents, by counsel Steven B. Nanners, appeal the Circuit Court of Braxton County's March 2, 2017, order placing children B.W. and R.B. in the permanent custody of the foster parents.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), David Karickhoff, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioners argue that the circuit court erred in denying their motions for disqualification and in placing the children in the permanent custody of the foster parents.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2015, the DHHR filed an abuse and neglect petition against the parents. According to the petition, the parents took B.W., then two years old, to the emergency room for what they described as a diaper rash. Upon examination, however, personnel observed that the child had multiple bruises around the eyes, face, back, arms, legs, groin, and buttock. Additionally, B.W.'s penis was discolored, swollen, and had a half-inch laceration. Personnel also noted at least three other small injuries to the child. According to the petition, the parents' only explanation for these injuries was that the child was clumsy and must have fallen. Following the doctor's examination, the parents were advised that the child required further testing. The parents refused and took the child from the hospital against medical advice. Based on these facts, a referral was made to Child Protective Services ("CPS"), who contacted law

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, this Court's original scheduling order listed the style of this matter as *In re:* B.W., R.W., and R.B. However, the parties agree that child R.W., who was placed in the custody of his non-abusing mother, is not at issue on appeal. As such, the Court hereby amends the style of this case to reflect the fact that the arguments on appeal relate only to children B.W. and R.B.

1

enforcement to have the child brought back to the hospital. When a caseworker arrived at the hospital, it was discovered that B.W. tested positive for marijuana, and the parents could not account for this fact. The CPS employee spoke with both parents individually, during which each parent denied having caused the child's injuries.

During the initial stages of the proceedings the DHHR identified petitioners, the parental grandparents of B.W., as a possible placement for the child. However, the DHHR declined such placement over concerns that petitioners had knowledge of the child's abuse but failed to protect him. According to medical evidence, the child's multiple injuries were at varying stages of healing. Although petitioners had frequently and recently cared for the child, they failed to refer the child's injuries to the DHHR or any other authority. As such, the child was placed with a foster family.

In June of 2015, the circuit court held a preliminary hearing, which the parents waived. In August of 2015, the mother gave birth to R.B. Thereafter, the DHHR amended the petition to include this child in the proceedings, and R.B. was placed in the same foster home as B.W. In September of 2015, the circuit court held two adjudicatory hearings. The circuit court heard evidence from the emergency room physician who testified that B.W. was brought to the emergency room with extensive injuries. The physician further testified that neither parent could provide a plausible explanation for these injuries, as the bruises were of varying ages and were, therefore, not consistent with a single injury. The physician also addressed the fact that the laceration on the child's penis was not consistent with diaper rash and that the bruises were not the result of a fall. Ultimately, the physician testified that the injuries were the result of non-accidental trauma. After taking evidence, the circuit court adjudicated both parents as abusing parents

In December of 2015, the circuit court held a dispositional hearing, after which it terminated the parents' parental and custodial rights to the children. Thereafter, petitioners and the children's foster parents intervened in the proceedings. Initially, the foster parents were represented by William A. McCourt Jr.

In January of 2016, the DHHR performed an assessment of petitioners' home, which was approved. The report noted no concerns about petitioners' home or their abilities as caregivers. However, despite DHHR representatives informing the home study evaluators of the prior concerns that petitioners were aware of the abuse to B.W., the home study contained no information regarding this issue. At this point, the circuit court granted petitioners weekend visitation with the children.

In June of 2016, Mr. McCourt withdrew from his representation of the foster parents after accepting a position with the Braxton County Prosecutor's Office. The following month, petitioners filed a motion to disqualify the prosecuting attorney's office from representing the DHHR. The circuit court held a hearing on this motion, during which Mr. McCourt testified. Ultimately, the circuit court ordered that Mr. McCourt refrain from participating in the matter in any way, including communications of any kind with attorneys or staff in his office, and denied the motion.

In October of 2016, Mr. McCourt inadvertently signed a certificate of service for discovery documents mailed to petitioners. That same month, petitioners filed a renewed motion for disqualification. The circuit court held a hearing on the renewed motion, during which Mr. McCourt testified that he signed the certificate as one of several presented to him by a legal assistant. He further confirmed that he had no communications with anyone in his office regarding the case and did not review any of the discovery materials to which the certificate of service related. The circuit court again denied the motion to disqualify the prosecutor's office, finding that the inadvertent signature did not necessitate disqualification.

Later that month, the circuit court held two evidentiary hearings concerning the children's permanent placement. Prior to the hearing, all four prospective parents underwent psychological and parental fitness evaluations. Following the evaluation of petitioner grandfather, the evaluator identified issues with physical functioning due to a prior serious accident; a history of drug abuse or dependence; prior thoughts of death or suicide; poor anger control; and a history of antisocial behavior, among other issues. The evaluator also diagnosed petitioner grandfather with child neglect, based on the fact that he cared for the child at times when the child showed signs of his parents' abuse and failed to report the same. The evaluator determined that petitioner grandfather's prognosis for improved parenting was "extremely poor." As to petitioner grandmother, her evaluation noted that, despite a degree in nursing and training as a court-appointed special advocate for abused and neglected children, she failed to report a cigarette burn on the child the week before the emergency room visit that gave rise to the petition. The evaluation also determined that petitioner grandmother questioned the mother about the child's bruises yet took no action, despite her testimony that the mother was a "chronic liar." The evaluator also noted that petitioner became angry and aggressive when discussing the foster parents and voiced an intention to deny them contact with the children. Further, the evaluation found that petitioner grandmother showed little empathy for the children's emotional wellbeing. Ultimately, the evaluator found petitioner grandmother's prognosis for improved parenting to be "basically nonexistent." The evaluations for the foster parents stated that "there [were] no current concerns with [either foster parents'] ability to appropriately parent" and the prognosis for both foster parents' continued parenting was "fair." Following these evaluations, petitioners retained another psychologist to perform evaluations on them. However, this evaluator indicated that she did not review any CPS records and was not aware that there were concerns over petitioners' failure to report the abuse to B.W. The evaluator found no mental illnesses that would prevent petitioners from parenting the children, but she also noted that she did not perform parental fitness evaluations on petitioners and was, therefore, unable to render opinions in this regard.

At the permanency hearings, petitioners presented evidence from several witnesses, including their adult daughter, who testified that they supported her through treatment for drug and alcohol addiction. The DHHR presented evidence from a caseworker who testified that the children would cry and beg not to attend visits with petitioners. Moreover, a psychologist who evaluated B.W. provided evidence that the child was "significantly attached" to the foster parents and did not like visiting petitioners. Further testimony from a psychologist indicated that the children had established a strong familial bond with their foster parents and that removing them from the home would be detrimental to their wellbeing. Ultimately, the circuit placed the

children in the permanent care of the foster parents.[2] It is from the circuit court's final placement order that petitioners appeal.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

First, the Court finds no error in the circuit court's denial of both of petitioners' motions to disqualify the prosecuting attorney's office from representing the DHHR. On appeal, petitioners argue that Mr. McCourt's representation of the foster parents and subsequent hiring at the Braxton County prosecuting attorney's office required disqualification of the entire office from representing the DHHR. We do not agree. In addressing conflicts of interest regarding prior representation of a party and a prosecutor's office, we have held as follows:

> "Pursuant to Rule 1.11 of the West Virginia Rules of Professional Conduct, the fact that an assistant prosecuting attorney previously represented a criminal defendant while in private practice does not preclude the prosecutor's office as a whole from participation in further prosecution of criminal charges against the defendant, provided that the circuit court has held a hearing on any motion to disqualify filed on this basis and determined that the assistant prosecutor has effectively and completely been screened from involvement, active or indirect, in the case." Syllabus Point 2, *State ex rel. Tyler v. MacQueen*, 191 W.Va. 597, 447 S.E.2d 289 (1994).

Syl. Pt. 3, *State v. Anderson*, 228 W.Va. 58, 717 S.E.2d 245 (2011). Here, the circuit court held hearings on both of petitioners' motions and found that Mr. McCourt was effectively and completely screened from any involvement in the matter. While it is true that Mr. McCourt later

---

[2]According to the parties, the parents' parental and custodial rights to all the children were terminated during the proceedings below. The children have been permanently placed in a foster home with a goal of adoption therein.

signed a certificate of service, the circuit court found that this was entirely by mistake and did not represent a violation of its prior order that Mr. McCourt have no communication with anyone in the office regarding the case. Specifically, the circuit court found that Mr. McCourt "mistakenly signed a certificate of service" and that "the firewall remained intact." Ultimately, the circuit court was of the opinion that this did "not create a conflict of interest which would cause the [p]rosecuting attorney of Braxton County to be recused." We agree. Petitioners argue that Mr. McCourt's execution of a certificate of service for discovery in their case was conclusive of the issue of a conflict of interest without any evidence to show that Mr. McCourt provided the prosecuting attorney with information that would have been prejudicial to them. On the contrary, all of the evidence below established that Mr. McCourt refrained from discussing the matter with anyone in the prosecuting attorney's office. As such, we find no error in the circuit court's denial of petitioners' motions for disqualification.

Finally, the Court finds no error in the circuit court permanently placing the children with the foster family. On appeal, petitioners argue that the DHHR was statutorily required to offer them permanent placement of the children. According to West Virginia Code § 49-4-114(a)(3),

> [f]or purposes of any placement of a child for adoption by the [DHHR], the [DHHR] shall first consider the suitability and willingness of any known grandparent or grandparents to adopt the child. Once grandparents who are interested in adopting the child have been identified, the [DHHR] shall conduct a home study evaluation, including home visits and individual interviews by a licensed social worker. If the [DHHR] determines, based on the home study evaluation, that the grandparents would be suitable adoptive parents, it shall assure that the grandparents are offered the placement of the child prior to the consideration of any other prospective adoptive parents.

It is true that the DHHR's home study found petitioners to be suitable adoptive parents. In fact, the parties even stipulated to this fact at the final evidentiary hearing on permanent placement. However, petitioners' argument on appeal ignores our prior holdings addressing this statute.

We have previously explained that

> "West Virginia Code § 49-3-1(a)(3) [now West Virginia Code § 49-4-114(a)(3)] provides for grandparent preference in determining adoptive placement for a child where parental rights have been terminated and also incorporates a best interests analysis within that determination by including the requirement that the DHHR find that the grandparents would be suitable adoptive parents prior to granting custody to the grandparents. The statute contemplates that placement with grandparents is presumptively in the best interest of the child, and the preference for grandparent placement may be overcome only where the record reviewed in its entirety establishes that such placement is not in the best interests of the child." Syl. pt. 4, *Napoleon S. v. Walker*, 217 W.Va. 254, 617 S.E.2d 801 (2005).

5

Syl. Pt. 2, *In re Aaron H.*, 229 W.Va 677, 735 S.E.2d 274 (2012). Here, the record on the whole established that placement with petitioners was not in the children's best interests, despite the fact that they were found to be suitable for such placement. Specifically, the psychological and parental fitness evaluations that petitioners underwent raised significant concerns regarding their ability to properly parent the children. In fact, according to their first evaluations, petitioners' prognoses for improved parenting were "extremely poor" and "non-existent," respectively. Based upon these evaluations, the evaluator recommended that "the children's best interests will be better met in an alternative placement."

On appeal, petitioners argue that these evaluations were improper, as the evaluators relied heavily on information obtained from the DHHR. Petitioners similarly argue that the foster parents' evaluations indicated that they omitted relevant information and were being defensive. Therefore, petitioners argue that the foster parents' evaluations were unable to be accurately assessed. Finally, petitioners argue that their later evaluations by different psychologists indicated that they had no issues preventing them from properly parenting the children. However, the record is clear that petitioners presented this evidence and these arguments to the circuit court. Essentially, petitioners argue on appeal that the circuit court did not give appropriate weight to this evidence in reaching its determination about permanent placement. We do not agree.

We have routinely held that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997). The record is clear that the circuit court considered the evidence upon which petitioners rely. Ultimately, however, the circuit court was "troubled the most" by the conclusions of the psychologists that first evaluated petitioners. In addressing this evidence, the circuit court found those evaluations to be "objective and impartial" and that the evaluators "did an excellent job with specific opinions . . . ." Based upon this evidence, the circuit court found that "it is in the best interests of the children to be placed permanently in the legal and physical custody of the foster parents . . . ." Because the circuit court appropriately considered placement with petitioners, as required by West Virginia Code § 49-4-114(a)(3), but ultimately found that placement with the foster parents was in the children's best interests, we find no error in this regard.

For the foregoing reasons, we find no error in the decision of the circuit court, and its March 2, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**: September 25, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker