696 S.E.2d 296

**In re ELIZABETH F. and Kyia F.**

**No. 35486.**

Supreme Court of Appeals of West Virginia.

Submitted May 4, 2010.

Decided June 2, 2010.

Cammie L. Chapman, Breckinridge, Davis, Sproles & Chapman, PLLC, Summersville, WV, Guardian ad Litem for the Minor Children, Elizabeth F. and Kyia F.

Stephen O. Callaghan, Callaghan & Callaghan, PLLC, Summersville, WV, Guardian ad Litem for the Minor Children, James M. and Jebadiah F.

Darrell V. McGraw, Jr., Attorney General, Charleston, WV, Angela Alexander Walters, Assistant Attorney General, Princeton, WV, for West Virginia Department of Health and Human Resources.

Jerome R. Novobilski, Clay, WV, for Intervenors, Janice & James B.

PER CURIAM:

The instant proceeding involves the grandparent preference for adoptive placement recognized by the Legislature in W. Va.Code § 49–3–1(a)(3) (2001) (Repl.Vol.2009)[1] and reiterated by this Court in Syllabus points 4 and 5 of *Napoleon S. v. Walker,* 217 W.Va. 254, 617 S.E.2d 801 (2005).[2] By order entered October 9, 2009, the Circuit Court of Nicholas County concluded that the grandparent preference mandated that the permanent placement of the four minor children at issue herein be with their maternal grandparents. On appeal to this Court, the guardians ad litem for the children and the West Virginia Department of Health and Human Resources argue that the circuit court's decided placement is not in the children's best interests. Upon a review of the parties' arguments, the record presented for appellate consideration and the supplements thereto,[3] and the pertinent authorities, we reverse the decision of the Nicholas County Circuit Court and remand this case for further proceedings consistent with this opinion.

I.

## FACTUAL AND PROCEDURAL HISTORY

Janice and James ("Hollie") B.[4] are the maternal grandparents of the four minor

---

1. See Section III, *infra,* for the text of W. Va. Code § 49–3–1(a)(3) (2001) (Repl.Vol.2009).

2. See *infra* Section III for the text of Syllabus points 4 and 5 of *Napoleon S. v. Walker,* 217 W.Va. 254, 617 S.E.2d 801 (2005).

3. During the pendency of the instant appeal, the Guardian ad Litem for Elizabeth and Kyia twice moved to supplement the record in this case, both of which motions were granted. For further discussion of the supplemented record, see Section III, *infra.*

children involved in this case: James M.,[5] Elizabeth F.,[6] Kyia F.,[7] and Jebadiah F.[8] Following the termination of the parental rights of the children's mother, Mary,[9] who is Janice's daughter, and of the children's fathers,[10] Janice and James sought to adopt the children and were granted intervenor status in such proceedings. The West Virginia Department of Health and Human Resources (hereinafter referred to as "the DHHR") thereafter conducted a foster care home study of Janice and James' home, and, by report dated May 6, 2009, determined that their home could be considered "a placement resource" for these grandchildren.

The circuit court then considered the children's permanent placement. By order entered October 9, 2009, the circuit court found that the DHHR had determined Janice and James to be an appropriate home with sufficient income; there are no psychological impediments to Janice's ability to "adequately protect the children"; Janice has reported her adult children's drug use to Child Protective Services (hereinafter referred to as "CPS"), which reporting resulted in CPS investigations thereof; and the four adoptive minor children currently in the home [11] are "doing well" and were placed there upon the recommendation of the DHHR that Janice and James' home was a suitable adoptive placement. Based upon these findings, the court concluded that

> West Virginia Code § 49–3–1 requires that appropriate grandparents be a preferred placement of the children.

In order to rebut the presumption, the State and guardians ad litem must show by clear and convincing evidence that it would be in the best interest of the children to prevent the placement of the children with the grandmother.

The State did show concerns, but there is no clear and convincing evidence to prevent placing the children with the maternal grandmother and step-grandfather Janice and [James] Holly [sic] B[.]

The Court believes that based upon *Napoleon [S.] v. Walker,* [217 W.Va. 254, 617 S.E.2d 801 (2005),] the Court has no other alternative than to place the children with the maternal grandmother and step-grandfather, Janice and [James] Holly [sic] B[.], as their home has been found to be appropriate and there is no clear and convincing evidence to indicate that they will not protect the children. *Absent the grandparent preference, the Court doubts that his decision would be the same.*

The Court further concludes that the age of the grandparents and the number of children in the home are not an impediment to the placement in this case.

There will be a requirement in the adoption proceeding that the B[.s] must keep certain individuals away from the children.

(Emphasis added). From these rulings, the Guardian ad Litem for Elizabeth and Kyia appeals to this Court. The Guardian ad Litem for James and Jebadiah and the DHHR join in the request for relief from this Court.

4. Consistent with our practice in similar cases involving sensitive facts, we will refer to the parties by their last initials rather than by their full names. *See, e.g., In re Cesar L.,* 221 W.Va. 249, 252 n. 1, 654 S.E.2d 373, 376 n. 1 (2007); *In re Randy H.,* 220 W.Va. 122, 125 n. 1, 640 S.E.2d 185, 188 n. 1 (2006); *In re Clifford K.,* 217 W.Va. 625, 630 n. 1, 619 S.E.2d 138, 143 n. 1 (2005).

5. James was born on April 23, 2003.

6. Elizabeth's date of birth is October 24, 2005.

7. Kyia was born on September 1, 2007.

8. Jebadiah's date of birth is November 2, 2008.

9. Mary's parental rights to the subject children were terminated following her voluntary relinquishment of her parental rights on February 13, 2009.

10. The children's fathers' parental rights were terminated following their voluntary relinquishment thereof between April 2009 and July 2009.

11. Apart from the four children at issue in this appeal, Janice and James previously have adopted two of Janice's grandchildren and two additional, unrelated children. All four of these adoptive children currently live with Janice and James.

## II.

### STANDARD OF REVIEW

The sole issue presented by the instant appeal concerns the preference accorded to grandparents to adopt their minor grandchildren after the parental rights of the grandchildren's parents have been terminated through abuse and/or neglect proceedings. We previously have explained the standard of review that governs appeals in abuse and neglect cases as follows:

Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

Syl. pt. 1, *In the Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996). In accordance with these guidelines, we proceed to consider the errors assigned by the parties.

## III.

### DISCUSSION

On appeal to this Court, the two Guardians ad Litem and the DHHR contend that the circuit court erred by placing the four children at issue herein with Janice and James in accordance with the statutory grandparent preference for adoptive placements despite the fact that such placement does not serve the children's best interests. In support of their objections to the circuit court's ruling, the Guardians and the DHHR state that the circuit court should not have preferred the grandparents as an adoptive placement in this case because such placement does not promote the children's best interests and that, despite the stated preference, such placement also must be in the subject children's best interests.

The Guardians and the DHHR claim, before this Court, that the home of Janice and James is not a suitable placement for the children because these grandparents cannot adequately protect the children from the negative influences and criminal tendencies of Janice's adult children. In this regard, they represent that Janice has continued to permit her adult children to be around her adoptive minor children, including allowing the children's mother, Mary, to live in her home while she was using and abusing drugs. Additionally, they contend that Janice allowed her adult son and his wife to live in the trailer behind her house, and requested them to move only after the DHHR indicated that she would not be approved as a foster home while they continued to live there due to her son's numerous CPS referrals. Moreover, the Guardians and the DHHR submit that Janice has not seemed willing to curtail the influence of her adult children on her adoptive minor children until the circuit court cautioned her to cease such interaction during the proceedings underlying this appeal, but even then she has since hosted a family dinner for both her adult and adoptive minor children. Furthermore, since the circuit court's hearing in this matter indicating its concern over such interactions, they represent that Janice has posted bond for her adult son, who has used Janice's address as his own address in the paperwork related to his felony delivery of a controlled substance (methamphetamine) charge.

By contrast, the intervenor grandparents, Janice and James B., argue that the circuit court correctly preferred them as the children's adoptive placement as required by W. Va.Code § 49–3–1(a)(3). In support of their argument, the grandparents assert that the DHHR approved their home as an appropriate placement for the children on May 6, 2009, and that, during the circuit court's hearing, evidence was presented demonstrat-

ing their financial ability to care for four additional children and the suitability of their home to accommodate such children. The expert witnesses further indicated that they believed that Janice and James would be capable of caring for and adequately protecting the subject children. Thus, the grandparents argue that the concerns expressed by the Guardians and the DHHR are unfounded and that the circuit court correctly preferred them as an adoptive placement, consistent with the statutory mandate to do so.

During its consideration of the record evidence below, the circuit court ultimately determined that the four subject children should be placed with Janice and James. However, in reaching this decision, the circuit court opined, "[a]bsent the grandparent preference, the Court doubts that his decision would be the same." In light of this commentary, we feel compelled to revisit the grandparent preference to explain the parameters for its application to the facts of a particular case.

■■■ The Legislature adopted the so-called "grandparent preference" to govern the adoption of children whose parents' parental rights have been terminated through abuse and neglect proceedings. Pursuant to W. Va.Code § 49-3-1(a)(3) (2001) (Repl.Vol. 2009),

[f]or purposes of any placement of a child for adoption by the department, the department shall first consider the suitability and willingness of any known grandparent or grandparents to adopt the child. Once any such grandparents who are interested in adopting the child have been identified, the department shall conduct a home study evaluation, including home visits and individual interviews by a licensed social worker. If the department determines, based on the home study evaluation, that the grandparents would be suitable adoptive parents, it shall assure that the grandparents are offered the placement of the child prior to the consideration of any other prospective adoptive parents.

Following the promulgation of this statute, this Court reiterated the preference accorded to grandparents in the adoption of their grandchildren and explained its application in Syllabus points 4 and 5 of *Napoleon S. v. Walker*, 217 W.Va. 254, 617 S.E.2d 801 (2005):

West Virginia Code § 49-3-1(a)[ (3) ] provides for grandparent preference in determining adoptive placement for a child where parental rights have been terminated and also incorporates a best interests analysis within that determination by including the requirement that the DHHR find that the grandparents would be suitable adoptive parents prior to granting custody to the grandparents. *The statute contemplates that placement with grandparents is presumptively in the best interests of the child, and the preference for grandparent placement may be overcome only where the record reviewed in its entirety establishes that such placement is not in the best interests of the child.*

By specifying in West Virginia Code § 49-3-1(a)(3) that the home study must show that the grandparents "would be suitable adoptive parents," *the Legislature has implicitly included the requirement for an analysis* by the Department of Health and Human Resources and circuit courts *of the best interests of the child, given all circumstances of the case.*

(Emphasis added). Our prior holdings in *Napoleon* are critically important insofar as we explicitly recognized that a crucial component of the grandparent preference is that the adoptive placement of the subject child with his/her grandparents must serve the child's best interests. Absent such a finding, adoptive placement with the child's grandparents is not proper.

■■■ In the case *sub judice*, the circuit court, while preferring the grandparents, Janice and James, as the children's permanent adoptive placement, expressed concern by commenting that, "[a]bsent the grandparent preference, the Court doubts that his decision would be the same." From this musing, this Court can surmise only that the circuit court believed the grandparent preference to be an absolute directive to place children with their grandparents in all circumstances. Such is not the case, however, as an integral part of the implementation of

the grandparent preference, as with all decisions concerning minor children, is the best interests of the child.

> Once a court exercising proper jurisdiction has made a determination upon sufficient proof that a child has been neglected and his natural parents were so derelict in their duties as to be unfit, the welfare of the infant is the polar star by which the discretion of the court is to be guided in making its award of legal custody.

Syl. pt. 8, in part, *In re Willis,* 157 W.Va. 225, 207 S.E.2d 129 (1973). *Accord* Syl. pt. 3, in part, *In re Katie S.,* 198 W.Va. 79, 479 S.E.2d 589 (1996) ("[T]he primary goal in cases involving abuse and neglect ... must be the health and welfare of the children."); Syl. pt. 5, in part, *Carter v. Carter,* 196 W.Va. 239, 470 S.E.2d 193 (1996) ("In ... custody matters, we have traditionally held paramount the best interests of the child."). Thus, adoption by a child's grandparents is permitted only if such adoptive placement serves the child's best interests. If, upon a thorough review of the entire record, the circuit court believes that a grandparental adoption is not in the subject child's best interests, it is not obligated to prefer the grandparents over another, alternative placement that does serve the child's best interests. *See* Syl. pts. 4 & 5, *Napoleon S. v. Walker,* 217 W.Va. 254, 617 S.E.2d 801. Because the circuit court accorded the grandparents an absolute preference in this case despite its expressed concerns about the propriety of such a placement, we reverse the circuit court's decision.

■ Furthermore, we find it necessary to remand this case for the circuit court to reconsider the record evidence, as supplemented, in determining whether adoptive placement of the subject children with their maternal grandparents, Janice and James, serves their best interests. Based upon our review of the record in this case, we share the circuit court's concerns as to whether permitting Janice and James to adopt their grandchildren serves the children's best interests. However, in addition to the record initially presented for this Court's review, upon which the circuit court based its decision, the Guardian ad Litem for Elizabeth and Kyia twice moved to supplement the record during the pendency of the case before this Court. The first motion to supplement presented evidence of numerous warrants for James' arrest resulting from worthless check charges in several different counties. We granted this motion to supplement the record and find this information to be instructive as to the grandparents' financial ability to care and provide for eight minor children, *i.e.,* the four adoptive children who currently reside with them and the four grandchildren they seek to adopt in the case *sub judice.* To the extent that the DHHR's May 6, 2009, home study of Janice and James considered their "financial stability," the various worthless check charges should be evaluated to determine the extent to which, if any, such charges impact the grandparents' current financial status. Therefore, we remand this case to the circuit court so that it may consider this supplemental evidence.

■ The second motion to supplement the record filed by Elizabeth and Kyia's Guardian ad Litem indicates that the DHHR has revoked its prior approval of Janice and James' home as a "Relative Foster/Adoptive home." We also granted this motion. In support of her motion, the Guardian proffered a March 28, 2010, letter from the DHHR informing the grandparents of its decision. Although the letter conveying this information does not explain in great detail the exact reasons relied upon by the DHHR in reaching this decision, it does reference James' "criminal charges" and indicates that "[t]hese charges appear to reflect your financial instability." Insofar as the Legislature has identified a favorable home study of the prospective adoptive grandparents as an indicator of their suitability as an adoptive placement for their grandchildren, *see* W. Va.Code § 49-3-1(a)(3); Syl. pt. 5, *Napoleon S. v. Walker,* 217 W.Va. 254, 617 S.E.2d 801, a change of circumstances that results in an unfavorable recommendation by the DHHR suggests an even more pressing need to consider not only the grandparent preference but also whether adoption by the children's grandparents would serve the children's best interests. To the extent that the March 28,

2010, letter alters the home study upon which the circuit court relied in finding the grandparents to be a suitable adoptive placement for the subject children, it is imperative that the circuit court reconsider its decision in light of this new evidence. Accordingly, we remand this case to the circuit court to permit it to additionally consider the supplemental evidence presented by the Guardian's second motion.

■ As a final matter, this Court is gravely concerned about the length of time that the four young children at issue in this case, namely, James, Elizabeth, Kyia, and Jebadiah, have been permitted to languish in foster care without a permanent placement. We previously have counseled that "[c]hild abuse and neglect cases must be recognized as being among the highest priority for the courts' attention. Unjustified procedural delays wreak havoc on a child's development, stability and security." Syl. pt. 1, in part, *In the Interest of Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365 (1991). *Accord* Syl. pt. 5, *In the Interest of Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365 ("The clear import of the statute [West Virginia Code § 49–6–2(d)] is that matters involving the abuse and neglect of children shall take precedence over almost every other matter with which a court deals on a daily basis, and it clearly reflects the goal that such proceedings must be resolved as expeditiously as possible."). In this vein, we urge the circuit court, as well as all of the parties to the instant proceeding, to conclude the children's permanency planning and ultimate placement as quickly and expeditiously as possible. To facilitate the commencement and conclusion of the remand proceedings, we issue the mandate of the Court contemporaneously with the issuance of this opinion.

## IV.

### CONCLUSION

For the foregoing reasons, the October 9, 2009, order of the Circuit Court of Nicholas County is hereby reversed, and this case is remanded for further proceedings consistent with this opinion. The mandate of the Court shall issue forthwith.

Reversed and Remanded.