# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**In Re: S.D., R.D., & L.D.**

**No. 13-0646** (Raleigh County 10-JA-14-K, 16-K, & 17-K)

**FILED**

January 17, 2014
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

### MEMORANDUM DECISION

Petitioners, the grandparents of S.D., R.D., and L.D., by counsel Carl W. Roop, appeal the Circuit Court of Raleigh County's order entered on May 29, 2013, denying placement of their grandchildren, S.D., R.D., and L.D., into their home in Kentucky. The West Virginia Department of Health and Human Resources ("DHHR"), by Angela Alexander Walters, its attorney, filed its response. The guardian ad litem, Anthony Sparacino Jr., filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioners argue that the circuit court erred in refusing to place the children in their home.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The DHHR filed the underlying abuse and neglect petition in March of 2010 based upon allegations of drug addiction, domestic violence, unsanitary living conditions, and medical neglect of the children by their parents. Around the time the petition was filed, child L.D. was placed into petitioners' custody. In June of 2010, both parents stipulated to being addicted to controlled substances, resulting in the neglect of the infant children, and received a post-adjudicatory improvement period that began immediately. The parents relocated to Parkersburg, West Virginia, in order to attend a long-term in-patient drug rehabilitation program. Based on the DHHR's finding, by March of 2011, all three of the children were living with their mother in Parkersburg.

On April 28, 2011, however, the children's parents violated the rules of their treatment facility and were removed from the program. Two days later, employees of the treatment program went to the parents' home and found the children's mother apparently under the influence of drugs; the children were naked and stated they were cold. On May 1, 2011, Child Protective Services ("CPS") received a call alleging the mother was under the influence of drugs and had been arrested for being on the street nearly naked, yelling that her baby was the devil and threatening to kill her husband and children. All three of the children were present during the incident and were observed by CPS workers to be unclean. According to testimony by a DHHR worker, petitioners refused to pick up the children when they were asked to care for the children

1

in their home. In May of 2011, the DHHR filed an amended petition for abuse and neglect, including the aforementioned occurrences from April and May of 2011. L.D. was reinstated in the proceedings in May of 2011, due to petitioners' refusal to care for him on May 1, 2011, when they were called. In July of 2011, pursuant to an Interstate Compact Placement Request made by the DHHR, the Cabinet for Health and Family Services of the Commonwealth of Kentucky ("CHFS") performed a home study at petitioners' home. Based upon the study, the CHFS found that petitioners failed the home study due to documented health concerns.

In September of 2011, the circuit court refused to extend the parents' improvement periods, but the case was continued several times between September of 2011 and October of 2012, while considering whether petitioners were a placement possibility. In November of 2011, a DHHR employee testified that L.D. was in the home of the parents earlier in the year because, according to the children's mother, petitioners were unable to care for L.D. At a placement hearing in April of 2012, petitioners argued for the placement of all three children at their home, which the DHHR stated could occur if the proper Kentucky agency found their home to be appropriate. The circuit court told petitioners that if they had a second home study done, it would be considered. Petitioners hired a private agency who found the home to be acceptable after conducting a second home study.

On May 29, 2013, the circuit court entered an order terminating the children's parents' parental rights.[1] Additionally, the circuit court found that placing the children with petitioners was not in the best interest of the children. In support of this finding, the circuit court found that Petitioner Grandmother called R.D. an inappropriate name during a supervised visit for throwing away a snack she had given R.D., which led the DHHR to forbid petitioners to visit the grandchildren; that petitioners were not in good health, which led to their inability to care for the L.D. in the past; and that placing the children with petitioners would be akin to placing them with the children's parents who were living near petitioners at that time. It is from this order that petitioners appeal.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record

---

[1] The children's mother appealed the termination of her parental rights in Case No. 13-0665 and their father appealed the termination of his parental rights in Case No. 13-0606. Each termination was affirmed.

2

viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

Petitioners argue that the circuit court erred in denying placement of the subject children in their home. Petitioners contend that there is a preference for placement of children in abuse and neglect cases with family members and that it would be better for the children to be placed together instead of in separate foster homes, as they were at the time of disposition. In the alternative, petitioners argue that they are entitled to guardianship due to an order entered in Kentucky, which petitioners argue is still enforceable. Finally, petitioners argue that the circuit court erred by failing to appoint a guardian ad litem for an emergency hearing and that it did not follow deadlines described in the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings.

Upon our review of the record, we find no error by the circuit court with regard to denying petitioners' request for child placement. While it is true that the West Virginia Code creates a preference for abused and neglected children to be placed with grandparents, this Court has clarified that the preference is not absolute and does not require lower courts to place children with their grandparents in all circumstances. *In re Elizabeth F.*, 225 W.Va. 780, 786-87, 696 S.E.2d 296, 302-03 (2010). Providing further explanation, we have held that "an integral part of the implementation of the grandparent preference, as with all decisions concerning minor children, is the best interests of the child." *Id*. In fact, once a lower court has properly determined that a child has been abused or neglected and that the natural parents are unfit, "'the welfare of the infant is the polar star by which the discretion of the court is to be guided in making its award of legal custody.' Syl. Pt. 8, in part, *In re Willis*, 157 W.Va. 225, 207 S.E.2d 129 (1973)." Syl. Pt. 4, *In re Elizabeth F.*, 225 W.Va. 780, 696 S.E.2d 296. The record contains ample documentation to show that the circuit court correctly found that placing the children with petitioners was not in the best interest of the children. Specifically, petitioners failed a home study, Petitioner Grandmother acted inappropriately toward one of the children during supervised visitation, and petitioners have a history of health issues interfering with their ability to provide care for the children.

As to the prior guardianship order relating to L.D., petitioners provide no evidence that the same is still valid and enforceable. This Court also finds that a guardian was appointed for L.D. in May of 2011. From our review of the record, the guardian adequately performed his duties and L.D. is flourishing in a foster home with a permanency plan of adoption. As to the alleged violations of the West Virginia Rules of Child Abuse and Neglect Proceedings, we find that any failure to strictly comply with the deadlines laid out therein does not warrant reversal.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED**: January 17, 2014

**CONCURRED IN BY**:

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II