# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**In Re: S.S. & A.S.**

**No. 14-1039** (Jackson County 13-JA-17 & 13-JA-18)

**FILED**

March 16, 2015
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioners, the children's maternal grandparents, by counsel Amanda J. Ray, appeal the Circuit Court of Jackson County's September 15, 2014, order denying their renewed motion to intervene and motion for the children to be returned to their custody. The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed its response in support of the circuit court's order. The guardian ad litem ("guardian") for the children, Erica Brannon Gunn, filed a response on behalf of the children supporting the circuit court's order and a supplemental appendix. On appeal, petitioners allege that the circuit court erred in failing to ensure the guardian properly performed her duties; in failing to ensure the children's permanency plan was developed early in the abuse and neglect proceedings and continuously updated; in failing to order a home study on their residence; in removing the children from their home; in denying them the ability to present evidence in support of their motions to intervene; in failing to address the statutory grandparent preference; and in failing to provide the children with stability or ensure their emotional bonds would remain strong.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2013, the DHHR filed an abuse and neglect petition against the parents alleging that a neighbor found the children, then four years old and three years old, wandering along a road. Police officers took the children to the home and found no one present. The home, however, was unfit for human habitation, as it lacked running water, was filled with trash, and was generally filthy. The police contacted Child Protective Services ("CPS") and also the mother, who returned a short time later. According to the mother, she had gone to visit her parents, petitioners herein, and admitted to leaving the children alone in the home. The petition further alleged that CPS observed a pipe used for smoking controlled substances and a pill crusher on the counter.[1]

---

[1]The petition further alleged that the father had no contact with the children, provided them no support, and had been deported to Mexico. His parental rights to the children were later terminated.

1

In April of 2013, the circuit court held a preliminary hearing and found that the DHHR failed to establish imminent danger existed at the time of removal and ordered the children be "returned to placement as it existed at the time of the filing of the [p]etition," i.e. petitioners' home. The next month, the circuit court held an adjudicatory hearing during which the mother admitted to certain allegations in the petition and was adjudicated as an abusing parent. The mother was then granted a post-adjudicatory improvement period in August of 2013, and was permitted to reside in petitioners' home with the children.

In October of 2013, the guardian, joined by the DHHR, filed a motion to revoke the mother's improvement period and to have the children placed in the DHHR's legal and physical custody. The motion alleged that the mother violated the terms of her probation by testing positive for marijuana, amphetamines, opiates, and buprenorphine, and by providing false information to her probation officer. The mother was incarcerated at the time of the motion's filing. The circuit court held a hearing on this motion on October 21, 2013, after already entering an order placing the children in the DHHR's legal and physical custody. At the hearing, the circuit court ratified its earlier order placing the children in the DHHR's legal and physical custody, but also granted the mother's motion to continue the children's temporary placement in petitioners' home.

The circuit court held a review hearing in November of 2013, during which the guardian agreed to a continuation of the mother's improvement period but asked that it be noncustodial and that the mother not be allowed to reside in petitioners' home with the children. The circuit court thereafter reinstated the mother's improvement period and allowed her to reside in petitioners' home with the children. Thereafter, in January of 2014, the guardian filed a motion to revoke the mother's improvement period and modify the children's placement. The guardian alleged that the mother continued to fail drug screens and had not sought drug treatment. Moreover, the guardian alleged that the children required a new placement because of their continued exposure to the mother's drug use in petitioners' home. The circuit court later held a hearing during which it revoked the mother's improvement period but denied the motion to modify the children's placement.

In March of 2014, the circuit court held a dispositional hearing and terminated the mother's parental rights. It further ordered a multidisciplinary team ("MDT") to convene to discuss the children's permanent placement. Present at the MDT were the guardian, the CPS caseworker, petitioner grandmother, and the mother's probation officer. The probation officer was present to discuss certain text messages that implicated petitioner grandmother in drug transactions. Petitioner grandmother agreed to a drug screen and tested positive for marijuana, amphetamines, benzodiazepines, and buprenorphine. Petitioner grandmother then admitted to the illegal use of multiple drugs, including marijuana, in the two weeks prior to the meeting. Thereafter, petitioners filed a pro se motion to intervene in the proceedings.

The next month, the circuit court held a hearing on petitioners' motion to intervene during which it took evidence, permitted petitioner grandmother to question witnesses, and ultimately found that substance abuse occurred in petitioners' home where the children resided. The circuit court then granted the guardian's renewed motion to modify placement and ordered the children removed from petitioners' home. The circuit court also denied petitioners' motion to

intervene. In July of 2014, the circuit court held a review hearing. Having obtained counsel, petitioners renewed their motion to intervene. The circuit court allowed petitioners' counsel the opportunity to speak on their behalf and took the matter under advisement. In August of 2014, the circuit court held a review hearing and denied petitioners' renewed motion to intervene because of petitioner grandmother's facilitation of the mother's drug use and her own drug abuse. The circuit court further denied petitioners' motion for return of custody of the children. It is from this order that petitioners appeal.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the circuit court denying the petitioners' various motions below, in the guardian's representation of the children, in the permanency planning for the children, or in the ultimate decision to deny petitioners placement of the children.

To begin, the record is clear that petitioners were provided two opportunities to address their motions to intervene below, including one instance in which petitioner grandmother was permitted to question witnesses and another in which their counsel was permitted to address the circuit court on their behalf. Petitioners have cited to no legal authority requiring the circuit court to allow them to present evidence or witnesses on their behalf in support of the motions to intervene, and the Court finds no error in the circuit court's rulings in this regard. While petitioners allege that they had additional evidence to support their motions that the circuit court did not consider, such as the results of their addiction assessments, the Court notes that such evidence did not support transfer of custody to petitioners. In fact, petitioner grandmother's addiction assessment specifically stated that marijuana is her "major problem." By the time petitioners filed their first motion to intervene, the circuit court had already removed the children from the home because of petitioner grandmother's positive drug screen and the finding that she enabled the mother's drug abuse while in the home with the children. As such, inclusion of these documents would not have supported placing the children in petitioners' home. Accordingly, we find no error in the circuit court denying petitioners' motions to intervene.

Moreover, the Court finds no merit in regard to petitioners' allegations that the guardian in this matter performed her duties deficiently. While petitioners argue that the guardian failed to conduct an individual investigation into the matter, present the children's opinions to the circuit court, or promote their best interests, the Court disagrees. Conversely, were it not for the guardian's tenacity in advocating for the children's best interests, the circuit court may very well have not uncovered petitioner grandmother's drug use while caring for these children. The Court also finds no merit in petitioners' assertion that the guardian was required to obtain additional counsel for the children because her determination of the children's best interests did not comport with the children's express wishes regarding permanency. While petitioners argue that the children wished to stay in the home, the record shows that due to their tender age, the children were unable to express meaningful wishes in regard to their permanency. In directing circuit courts on the subject of post-termination visitation, this Court has specifically instructed that a child's wishes be considered in the context of abuse and neglect proceedings only when the child "is of appropriate maturity" to make such requests. Syl. Pt. 11, *In re Daniel D.* 211 W.Va. 79, 562 S.E.2d 147 (2002).

Further, while petitioners argue that the guardian failed to conduct an independent investigation of the children's living arrangements because she did not visit their house, the Court finds that such a visit was unnecessary given the guardian's meetings with the children in other locations; her contact with petitioner grandmother via telephone, at hearings, and during MDT meetings; and her assertion that death threats by the children's mother caused her concern with regard to visiting the home in which the mother resided. Further, the record shows that the guardian zealously advocated on behalf of the children's best interest by repeatedly petitioning the circuit court to modify their placement due to the guardian's concerns about petitioners and their enabling of the mother's drug use. Ultimately, the guardian's position was validated by petitioner grandmother's own drug screen yielding positive results for many of the same drugs that the mother used, as well as evidence indicating that petitioner grandmother used the mother to purchase drugs for her. For these reasons, the Court finds no merit in petitioners' argument that the circuit court did not ensure the guardian performed her duties below.

Similarly, the Court finds no merit in petitioners' argument that the circuit court failed to ensure that the DHHR was properly planning for the children's permanency. According to the parties, the permanency plan for the children from the outset of the proceedings was reunification with the mother or a legal guardianship with petitioners. That petitioners were ultimately found to be an unfit placement for the children is not evidence that the circuit court did not ensure appropriate permanency planning throughout the proceedings. Further, while petitioners assert that they were not encouraged to attend MDT meetings or court hearings as required by West Virginia Code § 49-6-8(h), the Court notes that this Code section provides only for notice and the opportunity to be heard at a permanency hearing for certain individuals, including a "relative providing care for the child." Moreover, the record clearly shows that petitioners participated in multiple MDT meetings and hearings below. As such, the Court finds no error in regard to petitioners' allegation that the circuit court failed to ensure that proper planning for the children's permanency occurred below.

Additionally, the Court finds no error in the circuit court denying petitioners permanent placement of the children. While petitioners argue that the circuit court erred in failing to require

4

the DHHR to complete a home study of their residence, the Court finds, under the limited circumstances of this case, that such home study was unnecessary because of petitioner grandmother's admitted drug abuse. Specifically, the circuit court was presented with sufficient evidence, including petitioner grandmother's failed drug screen, to support its finding that petitioner grandmother "was an enabler and facilitator for [the mother's] drug use that led to the revocation of [the mother's] post-adjudicatory improvement period." Because the evidence established that petitioner grandmother was abusing "some of the same drugs [the mother] was abusing," it is clear that the conditions of abuse and neglect in the home where petitioners, the mother, and the children resided persisted throughout the proceedings below. Moreover, petitioners' first motion to intervene below indicated that they did not feel that they should be required to participate in the home study the DHHR attempted to initiate because they had already had custody of the children for an extended period of time.

West Virginia Code § 49-3-1(a)(3) states as follows:

For purposes of any placement of a child for adoption by the department, the department shall first consider the suitability and willingness of any known grandparent or grandparents to adopt the child. Once any such grandparents who are interested in adopting the child have been identified, the department shall conduct a home study evaluation, including home visits and individual interviews by a licensed social worker. If the department determines, based on the home study evaluation, that the grandparents would be suitable adoptive parents, it shall assure that the grandparents are offered the placement of the child prior to the consideration of any other prospective adoptive parents.

This statute requires the home study process to be undertaken in order to determine if a potential grandparent would be a suitable adoptive parent. In the present case, such home study was unnecessary given that evidence established that petitioner grandmother was engaging in the same substance abuse that resulted in the mother having her parental rights terminated. As such, the circuit court was able to make a determination as to petitioners' suitability as potential adoptive parents absent a home study. While petitioner argues that the circuit court failed to consider the three DHHR visits to the home that yielded no concerns about the children being placed therein, the Court notes that this argument ignores the fact that the DHHR was unaware that petitioner grandmother was engaging in the same behavior that resulted in termination of the mother's parental rights. That the DHHR did not uncover such evidence during a visit to the home does not render the home suitable for the children.

Similarly, the Court finds no merit in petitioners' argument that in reaching a decision on permanency, the circuit court failed to address the statutory preference for placing children with their grandparents as outlined in West Virginia Code § 49-3-1(a)(3). As addressed above, the evidence established that petitioners were not suitable adoptive parents and, therefore, not entitled to preference in terms of the children's custody. In denying petitioners permanent placement of the children and denying their motion for transfer of custody, the circuit court specifically found that placement in petitioners' home was not in the children's best interests. This is in keeping with our case law on the grandparent preference, wherein we have stated that the preference is subordinate to the children's best interests. Specifically, we have held that "a

crucial component of the grandparent preference is that the adoptive placement of the subject child with his/her grandparents must serve the child's best interests. Absent such a finding, adoptive placement with the child's grandparents is not proper." *In re Elizabeth E*, 225 W.Va. 780, 786, 696 S.E.2d 296, 302 (2010). Because the circuit court specifically found that placement in petitioners' home was not in the children's best interests because of the ongoing substance abuse therein, it is clear that the circuit court properly considered the grandparent preference before denying placement in petitioners' home.

Finally, the Court finds no merit in petitioners' argument that the circuit court failed to provide the children stability or preserve their emotional bonds. While petitioners argue that immediate removal from a home can be traumatic to children, the Court notes this argument wholly ignores the fact that petitioners' home was deemed unsuitable for the children because of petitioner grandmother's admitted drug use. Simply put, petitioners' actions necessitated the children's immediate removal by virtue of petitioner grandmother perpetuating the same substance abuse issues that required termination of the mother's parental rights. The importance of maintaining the children's relationships with petitioners simply does not outweigh petitioner grandmother's drug-related behavior. Because remaining in petitioners' home was not in the children's best interests, the circuit court had no choice but to order their immediate removal. As such, we find no error in the circuit court denying petitioners permanent placement of the children or in denying their motion for transfer of custody.

For the foregoing reasons, we find no error in the decision of the circuit court and its September 15, 2014, order is hereby affirmed.

Affirmed.

**ISSUED**: March 16, 2015

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II