STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

FILED

April 12, 2016

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re:* N.H.

No. 15-1199 (Greenbrier County No. 11-JA-18)

MEMORANDUM DECISION

Petitioner Grandmother C.W., by counsel J. Steven Hunter, appeals the order of the Court of Greenbrier County, entered on November 10, 2015, that permanently placed N.H. with her foster parents for adoption. The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Melinda Dugas, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Michael R. Whitt, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in refusing to place the child in her home and failed to timely grant her motion to intervene.[1]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2013, the DHHR received a referral that N.H.'s biological mother, O.H., committed domestic violence in the child's presence against petitioner. N.H. and O.H. lived in petitioner's home. Officer Clendenin of the Alderson Police Department investigated the matter and noted that the police "[are] at this house at least once a week and for reports of domestic violence." The DHHR further investigated that matter and discovered a pending Child Protective Services ("CPS") investigation based upon O.H.'s drug and alcohol abuse. Petitioner admitted that she frequently fought with O.H. and that she did not know where N.H. was during their most recent fight. O.H. refused to cooperate with the DHHR and refused to sign a temporary protection plan for N.H. The DHHR removed N.H. from the home. The following day O.H. was arrested for battery on a police officer and obstruction of justice. The following month, the DHHR filed a petition for abuse and neglect based upon the referral.

In November of 2013, petitioner filed a motion to intervene arguing that she was entitled to notice of the proceedings. As relief, petitioner sought to attend all hearings and multi-disciplinary team ("MDT") meetings, and to be considered for temporary and/or permanent placement of the child. Thereafter, the circuit court held an adjudicatory hearing during which it

---

[1]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below.

1

heard arguments on petitioner's motion to intervene. Respondents opposed petitioner's motion to intervene based upon the domestic violence allegations against petitioner. Ultimately, the circuit court deferred ruling on petitioner's motion but allowed her to receive notice of the MDT meetings.

In February of 2014, petitioner renewed her motion to intervene. Thereafter, the circuit court held a review hearing and heard additional arguments on petitioner's renewed motion. Again, respondents opposed petitioner's motion based upon the history of domestic violence in petitioner's home. Ultimately, the circuit court denied petitioner's motion to intervene but granted her supervised visitation with N.H.

In March of 2015, petitioner filed a second renewed motion to intervene arguing that she should be considered for placement of the child in lieu of foster care or adoption by a non-relative. Thereafter, the circuit court held a dispositional hearing related to the termination of O.H.'s parental rights. The circuit court continued the issue of petitioner's second renewed motion to intervene because it was not properly noticed for a hearing.[2] Furthermore, petitioner filed a motion for immediate transfer of the physical custody of N.H. Following a hearing on petitioner's second renewed motion to intervene, the circuit court found that petitioner has asserted her rights to be considered for adoptive placement of the child, and it directed the DHHR to conduct a home study of petitioner's home. Additionally, the circuit court granted petitioner supervised visitation and directed her to undergo a psychological evaluation to determine the best interests of N.H. as to permanent placement.

In September of 2015, the circuit court held a permanency plan hearing during which the DHHR presented Dr. Timothy Saar's psychological evaluation. Dr. Saar concluded that N.H. "appears to have a strong bond and attachment to [her foster parents], removing her from their care is likely to cause her significant distress and may lead to an increase in [N.H.'s] behavioral symptoms." After considering the parties' arguments, the circuit court found that the permanency plan of adoption by N.H.'s foster parents was in N.H.'s best interest. The circuit court directed the MDT to propose a visitation schedule for petitioner. Subsequently, by order entered December 1, 2015, the circuit court granted petitioner visitation with N.H. on alternating Saturdays. This appeal follows.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire

[2]By order entered March 30, 2015, the circuit court terminated O.H.'s parental rights to her child. O.H. appealed the termination and, subsequently, this Court affirmed the termination of her parental rights. *See In re: N.H.*, No. 15-0377, 2015 WL 5555468 (W.Va. Sept. 21, 2015)(memorandum decision).

evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In the Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in failing to apply the grandparent preference and in finding that placement with petitioner was not in N.H.'s best interests. Petitioner claims that the circuit court, pursuant to West Virginia Code § 49-3-1(a), should have placed N.H. with petitioner, as her maternal grandparent, because she passed the requisite home study and that it was in N.H.'s best interests. Upon our review, we find no error in the circuit court's order denying placement with petitioner.

This Court has been clear that the preference for placing children with grandparents remains subordinate to the best interests analysis. We have held as follows:

West Virginia Code § 49-3-1(a) provides for grandparent preference in determining adoptive placement for a child where parental rights have been terminated and also incorporates a best interests analysis within that determination by including the requirement that the DHHR find that the grandparents would be suitable adoptive parents prior to granting custody to the grandparents. The statute contemplates that placement with grandparents is presumptively in the best interests of the child, and the preference for grandparent placement may be overcome only where the record reviewed in its entirety establishes that such placement is not in the best interests of the child.

By specifying in W.Va. Code § 49-3-1(a)(3) that the home study must show that the grandparents "would be suitable adoptive parents," the Legislature has implicitly included the requirement for an analysis by the Department of Health and Human Resources and circuit courts of the best interests of the child, given all circumstances of the case.

Syl. Pts. 4 & 5, *Napoleon S. v. Walker*, 217 W.Va. 254, 617 S.E.2d 801 (2005); *see also In re Aaron H.*, 229 W.Va. 677, 735 S.E.2d 274 (2012) (Affirming circuit court order that placed child with foster parent over grandparent based upon the child's best interests.); *In re Hunter H.*, 227 W.Va. 699, 715 S.E.2d 397 (2011) (The grandparent preference must be considered in conjunction with our long standing jurisprudence that "the primary goal in cases involving abuse and neglect . . . must be the health and welfare of the children." (internal citations omitted)); *In re Elizabeth F.*, 225 W.Va. 780, 696 S.E.2d 296 (2010) (Holding that the grandparent preference must be tempered by a court's consideration of the child's best interests.); *Kristopher O. v. Mazzone*, 227 W.Va. 184, 193, 706 S.E.2d 381, 390 (2011) (Stating "compliance with federal law does not require that a child be placed with a blood relative, it only requires that such placement is considered.)

Moreover, we have previously held that

> "[o]nce a court exercising proper jurisdiction has made a determination upon sufficient proof that a child has been neglected and his natural parents were so derelict in their duties as to be unfit, the welfare of the infant is the polar star by which the discretion of the court is to be guided in making its award of legal custody." Syllabus point 8, in part, *In re Willis*, 157 W.Va. 225, 207 S.E.2d 129 (1973).

Syl. Pt. 4, *In re Elizabeth F.*, 225 W.Va. 780, 696 S.E.2d 296 (2010).

In this case, the circuit court properly considered petitioner for placement and weighed the available evidence in reaching its determination. The evidence established that it is in N.H.'s best interests to remain in her current placement. A review of the record reveals that N.H. has spent a significant amount of her life with her foster parents. N.H.'s foster mother has "on a continuing day-to-day basis . . . fulfilled [N.H.]'s psychological and physical needs for a parent and provided for her emotional and financial support." Furthermore, Dr. Saar concluded that removing N.H. from her current placement "is likely to cause her significant distress and may lead to an increase in [N.H.]'s behavioral symptoms." Furthermore, while it appears that a home study was completed on petitioner's residence, the worker raised concerns with placing N.H. in petitioner's home because she minimized O.H.'s failure to comply with her improvement period in the underlying proceedings. For these reasons, we find no error in the circuit court denying placement of N.H. in petitioner's home.

Petitioner also argues that the circuit court erred in timely ruling on her motions to intervene. Petitioner's argument is primarily based upon her assertion that the circuit court failed to grant her temporary placement of N.H. throughout the proceedings.[3] While it is true that the circuit court did not immediately grant petitioner's motion to intervene, the circuit court ultimately granted petitioner's motion to intervene. *See* Syl. Pt. 1, *State ex rel. Lilly v. Carter*, 63 W.Va. 684, 60 S.E. 873 (1908) (Holding "[m]oot questions or abstract propositions, the decision of which would avail nothing in the determination of controverted rights of persons or of property, are not properly cognizable by a court."). Nevertheless, West Virginia Code § 49-6-3(a) provides that "[u]pon the filing of a petition, the court may order that the child alleged to be an abused or neglected child be delivered . . . into the custody of . . . a responsible person found by the court to be a fit and proper person." Here, the circuit court initially heard evidence of the domestic violence in petitioner's home. Furthermore, petitioner admitted that she was aware that O.H. was using drugs and abusing alcohol while in her home and caring for N.H. Moreover, the circuit court permitted petitioner to participate in MDT meetings throughout the proceeding, granted petitioner supervised visitation, and appropriately considered petitioner for permanent

---

[3]Petitioner's argument is premised on her belief that the circuit court was required to grant her motion to intervene pursuant to Rule 24(a) of the West Virginia Rules of Civil Procedure. While this Court has decided petitioner's argument on other grounds, we note that Rule 24 does not apply in juvenile proceedings. *See* W.Va. R. of Civ. Proc. 81(a)(7) (Only Rules 5(b), 5(e), and 80 apply in juvenile proceedings.)

placement. For these reasons, we find no compelling reason to warrant reversal of the circuit court's decisions.

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 10, 2015, order is hereby affirmed.

Affirmed.

**ISSUED:  April 12, 2016**

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II