# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

FILED

**October 11, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re*: **L.L.**

**No. 16-0316** (Clay County 14-JA-68)

## MEMORANDUM DECISION

Petitioner, the paternal grandmother of one-year-old L.L., by counsel Anita Harold Ashley, appeals the Circuit Court of Clay County's February 26, 2016, order granting permanent placement of L.L. to his foster parents.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Kevin W. Hughart, filed a response on behalf of the child in support of petitioner receiving permanent placement of now two-year-old L.L. On appeal, petitioner argues that the circuit court erred in placing the child with the foster parents in violation of West Virginia Code § 49-4-114(a)(3), which provides a preference to grandparents for child placement in abuse and neglect cases.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In November of 2014, L.L. was born and tested positive for marijuana and morphine. Later in November of 2014, the DHHR filed an abuse and neglect petition that alleged the child's mother abused controlled substances during her pregnancy with L.L. The initial petition listed the child's father as "unknown." Petitioner's son submitted to genetic testing and the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective on May 20, 2015. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below.

results confirmed that he was the child's biological father. As such, the DHHR filed an amended petition in March of 2015 that named petitioner's son as L.L.'s biological father and alleged that he abused controlled substances and, as a result, was unable to parent the child. Subsequently, the DHHR placed the four-month-old child with a foster family.[3] Before the DHHR even filed its amended petitioner, petitioner filed, in February of 2015, a motion to intervene in the abuse and neglect proceedings. She sought the child's placement at her home in the State of Florida, and requested visitation with L.L.

In March of 2015, following an adjudicatory hearing wherein the circuit court found that L.L.'s parents abused him, petitioner's counsel asked the circuit court to rule on her motion to intervene and on her request for visitation but the circuit court deferred its ruling and stated that it would rule on her motion at the dispositional hearing.

The circuit court held a dispositional hearing in April of 2015. The parental rights of L.L.'s biological parents were terminated by order entered on June 17, 2016. Petitioner's counsel failed to appear at the hearing but the guardian asked that the circuit court rule on petitioner's motion to intervene and her request for visitation.[4] The circuit court again deferred ruling on petitioner's motion and stated that it would rule at the next review hearing. In July of 2015, for the purposes of determining whether petitioner could adequately care for the child, the circuit court ordered the DHHR to complete a study of petitioner's home in Florida. The home study was completed in September of 2015 and the DHHR found the home to be suitable.

In December of 2015, the circuit court held an evidentiary hearing wherein the child's foster parents expressed their desire to adopt the child. According to the foster parents, the child lived in their home since his release from the hospital and they provided him with special needs care.[5] Petitioner also expressed her desire to adopt the child and testified that she had the ability to properly care for his special needs. The DHHR recommended that the child remain with his foster parents because of the bond between the child and the foster parents and their attention to his special needs care. However, the DHHR stated that they received petitioner's approved home study and agreed that petitioner's home was an appropriate placement for the child. The then newly-appointed guardian made no recommendations regarding the child's placement. At the

---

[3]The child has been in the care of this foster family since the initial DHHR placement. The record indicates that the child was approximately four months old at the time of placement although the circuit court's order indicates that the child was placed at approximately nine months old after his release from the hospital.

[4]Kevin W. Hughart is the third guardian ad litem appointed in this case. Originally, Jerome Novobilski was appointed to represent L.L. An order relieving Mr. Novobilski and appointing Daniel Armstrong was entered in March of 2015. Mr. Armstrong subsequently took employment outside of the judicial circuit and the current guardian, Mr. Hughart, was appointed by an order entered on December 1, 2015.

[5]As a result of his mother's drug use, the child has high blood pressure and hepatitis C. He continues to be monitored for congenital heart conditions that were not corrected by an earlier surgery.

close of the evidence, petitioner again moved for a ruling on her request for visitation with the child and the circuit court denied her request for visitation.

In January of 2016, the circuit court held a permanent placement review hearing. At the hearing, the guardian recommended placement of the child with petitioner on the ground that he did not believe that the evidence presented at the evidentiary hearing rebutted the grandparent preference, as set forth in West Virginia Code § 49-4-114(a)(3).[6] On February 26, 2016, the circuit court entered an order granting permanent placement of the child with the foster parents. In that order, the circuit court noted that petitioner had a "fit, apt, and suitable home," but ultimately found that a bond existed between the child and his foster parents and concluded that the child's best interests were served by his permanent placement with the foster parents. It is from this order that petitioner now appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in placing the child with the foster parents in violation of the statutory preference afforded to grandparents in abuse and neglect

---

[6]West Virginia Code § 49-4-114(a)(3) provides as follows:

For purposes of any placement of a child for adoption by the department, the department shall first consider the suitability and willingness of any known grandparent or grandparents to adopt the child. Once grandparents who are interested in adopting the child have been identified, the department shall conduct a home study evaluation, including home visits and individual interviews by a licensed social worker. If the department determines, based on the home study evaluation, that the grandparents would be suitable adoptive parents, it shall assure that the grandparents are offered the placement of the child prior to the consideration of any other prospective adoptive parents.

cases. In analyzing the grandparent preference, this Court has explained that it remains subordinate to the child's best interests. We have held as follows:

> 4.     West Virginia Code § 49-3-1(a) [now 49-4-114(a)] provides for grandparent preference in determining adoptive placement for a child where parental rights have been terminated and also incorporates a best interests analysis within that determination by including the requirement that the DHHR find that the grandparents would be suitable adoptive parents prior to granting custody to the grandparents. The statute contemplates that placement with grandparents is presumptively in the best interests of the child, and the preference for grandparent placement may be overcome only where the record reviewed in its entirety establishes that such placement is not in the best interests of the child.

> 5.     By specifying in W[est] V[irginia] Code § 49-3-1(a)(3) [now 49-4-114(a)(3)] that the home study must show that the grandparents "would be suitable adoptive parents," the Legislature has implicitly included the requirement for an analysis by the Department of Health and Human Resources and circuit courts of the best interests of the child, given all circumstances of the case.

Syl. Pts. 4 and 5, *Napoleon S. v. Walker*, 217 W.Va. 254, 617 S.E.2d 801 (2005); *see also In re Aaron H.*, 229 W.Va. 677, 735 S.E.2d 274 (2012) (affirming circuit court order that placed child with foster parent over grandparent based upon the child's best interests.); *In re Hunter H.*, 227 W.Va. 699, 715 S.E.2d 397 (2011) (stating that grandparent preference must be considered in conjunction with our long standing jurisprudence that "the primary goal in cases involving abuse and neglect . . . must be the health and welfare of the children." (internal citations omitted)); *In re Elizabeth F.*, 225 W.Va. 780, 696 S.E.2d 296 (2010) (holding that grandparent preference must be tempered by court's consideration of the child's best interests.); *Kristopher O. v. Mazzone*, 227 W.Va. 184, 193, 706 S.E.2d 381, 390 (2011) (stating that "compliance with federal law does not require that a child be placed with a blood relative, it only requires that such placement is considered.").

Moreover, we have previously held that

> "[o]nce a court exercising proper jurisdiction has made a determination upon sufficient proof that a child has been neglected and his natural parents were so derelict in their duties as to be unfit, the welfare of the infant is the polar star by which the discretion of the court is to be guided in making its award of legal custody." Syllabus point 8, in part, *In re Willis*, 157 W.Va. 225, 207 S.E.2d 129 (1973).

Syl. Pt. 4, *In re Elizabeth F.*, 225 W.Va. 780, 696 S.E.2d 296 (2010).

In the case at hand, the circuit court correctly considered the evidence in its entirety and determined the proper placement for L.L. The evidence established that the child developed a

bond with his foster parents because they have cared for him since his discharge from the hospital. The circuit court further noted that the foster parents addressed the child's ongoing medical needs for approximately twenty continuous months before the permanent placement hearing and were accustomed to caring for those special medical needs at that time. While the child could have possibly developed a bond with his grandmother over time, he would have to be taken from the only parents he has known in order to do so. We do not second guess the circuit court's determination that removing the child from his only known home was not in his best interests. Given the circumstances of this case, we find no error in the circuit court's order placing the child for adoption in the foster home.

For the foregoing reasons, we affirm the circuit court's February 26, 2016, order.

Affirmed.

**ISSUED**: October 11, 2016

**CONCURRED IN BY**:

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II