STATE OF WEST VIRGINIA

**FILED**

**June 6, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re*: C.D.

No. 15-1234 (Jackson County 14-JA-53)


**MEMORANDUM DECISION**


Petitioner Grandmother D.D., by counsel Lauren A. Estep, appeals the Circuit Court of Jackson County's November 19, 2015, order denying petitioner's motion for custody of ten-year-old C.D.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Erica Brannon Gunn, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in finding that it was not in the child's best interests and welfare to be placed in petitioner's custody.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In August of 2014, the DHHR filed an abuse and neglect petition against the child's parents and maternal grandparents.[3] In that petition, the DHHR alleged that the whereabouts of

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Further, petitioner appeals the circuit court's denial of her custody to C.D. only. Therefore, while the proceedings below involved C.D.'s half-brother, J.D., who was placed with his biological father, this appeal relates only to the custody of C.D. Further, petitioner and her husband had custody of another child, Z.D., who died reportedly of a heart defect.

[2]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below.

the child's parents were unknown and that the maternal grandparents were the child's custodians. The DHHR further claimed that the Jackson County Animal Shelter responded to a call about unattended animals at petitioner's home. Upon their arrival, shelter employees found the child alone in the home with dog feces and trash covering the floors. The DHHR also noted that petitioner and her husband were in poor health and had a history of Child Protective Services involvement, which included several referrals regarding inadequate child care and lack of proper supervision.

In September of 2014, the circuit court held an adjudicatory hearing as to petitioner. At that hearing, a law enforcement officer and the DHHR worker testified in support of the allegations in the petition. In addition to testimony regarding the state of the child and petitioner's home as alleged in the petition, the DHHR worker reported that the child informed her that he was alone in the home for five days when shelter employees arrived. At the conclusion of that hearing, the circuit court found that petitioner had neglected the child.

Thereafter, the circuit court granted petitioner's motion for a post-adjudicatory improvement period. The terms of that improvement period included supervised visits with the child and successful completion of parenting and adult life skills classes to be taught by a DHHR service provider in petitioner's home. The service provider later reported that petitioner's home was "fairly straight" but often emitted a "foul odor." Further, the visitation supervisor overseeing the child's visits noted that petitioner and her husband often used their visitation time to have the child perform chores or repairs around the home. The child often wanted to leave the visits early.

At a final review hearing on petitioner's improvement period held in August of 2014, the DHHR and guardian admitted that petitioner had technically complied with the terms of her improvement period. However, the DHHR and guardian objected to the circuit court placing the child in petitioner's custody because such placement was not in the child's best interests. The circuit court then held the issue of custody in abeyance until the date scheduled for the dispositional hearing.

In September of 2015, the circuit court held a dispositional hearing. While the circuit court considered petitioner's successful completion of the terms of her improvement period, it noted that she had serious health concerns, which limited her mobility; that the child has attention deficit disorder; that the child was thriving in his foster placement; and that the foster mother was committed to petitioner's continued visitation with the child because they reportedly had a significant bond. The circuit court found that the child's best interests were to remain in the foster home. As such, the circuit court denied petitioner's motion for child custody, but directed that petitioner's visits with the child continue. This appeal followed.

The Court has previously established the following standard of review:

---

[3]The parental rights of C.D.'s parents were ultimately terminated in the proceedings below. They did not appeal that termination. Petitioner's husband also did not appeal the circuit court's final order separating him from the child. As such, this memorandum decision relates to petitioner only.

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Further, our case law is clear that "in the context of abuse and neglect proceedings, the circuit court is the entity charged with weighing the credibility of witnesses and rendering findings of fact." *In re Emily*, 208 W.Va. 325, 339, 540 S.E.2d 542, 556 (2000) (citing Syl. Pt. 1, in part, *In re Travis W.*, 206 W.Va. 478, 525 S.E.2d 669 (1999)); se*e also Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997) (stating that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations.").

On appeal, petitioner argues that the circuit court erred in denying her custody of the child because it was in the child's best interests to be placed with her. In all abuse and neglect proceedings, "the best interests of the child is the polar star by which decisions must be made which affect children." *Michael K.T. v. Tina L.T.*, 182 W.Va. 399, 405, 387 S.E.2d 866, 872 (1989) (citation omitted). This Court has repeatedly held that "the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children." Syl. Pt. 3, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996). With regard to grandparent placement, we have explained that

> Our prior holdings in *Napoleon* [*S. v. Walker*, 217 W.Va. 254, 617 S.E.2d 801 (2005)] are critically important insofar as we explicitly recognized that a crucial component of the grandparent preference is that the adoptive placement of the subject child with his/her grandparents must serve the child's best interests. Absent such a finding, adoptive placement with the child's grandparents is not proper.

*In re Elizabeth F.*, 225 W.Va. 780, 786, 696 S.E.2d 296, 302 (2010).[4] Notably, we have also held that "the level of a parent's compliance with the terms and conditions of an improvement period

---

[4]Syllabus Points 4 and 5 of *Napoleon S. v. Walker*, 217 W.Va. 254, 617 S.E.2d 801 (2005) provide as follows:

(continued . . . .)

is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, in part, *In re B.H.*, 233 W.Va. 57, 754 S.E .2d 743 (2014).

In support of her contention, petitioner claims that she and her husband had a strong bond with the child, stronger than the typical grandparent-child relationship, as they were the only "parents" he ever knew. Indeed, petitioner claims to have been the child's psychological parent.[5] Therefore, petitioner claims that it was clearly in the child's best interests to remain in her custody.

Following a review of the record on appeal, it is clear that it was not in the child's best interests to return to petitioner's custody. At the outset, we note the underlying abuse and neglect in this case was severe and included effective abandonment of this child in extremely poor and unhealthy living conditions. These conditions did not appear to be fully remedied during these proceedings given the service provider's indication of odors in the home. Further, although petitioner complied with the requirements of her improvement period, successful completion of those terms was only one factor to be considered by the circuit court. Petitioner was also reported to have serious health concerns that continued at the time of disposition in this case and greatly limited her mobility. Petitioner and the child had a bond, which resulted in the circuit court's

---

(continued . . . .)

West Virginia Code § 49-3-1(a)[(3)] provides for grandparent preference in determining adoptive placement for a child where parental rights have been terminated and also incorporates a best interests analysis within that determination by including the requirement that the DHHR find that the grandparents would be suitable adoptive parents prior to granting custody to the grandparents. The statute contemplates that placement with grandparents is presumptively in the best interests of the child, and the preference for grandparent placement may be overcome only where the record reviewed in its entirety establishes that such placement is not in the best interests of the child.

By specifying in West Virginia Code § 49-3-1(a)(3) that the home study must show that the grandparents "would be suitable adoptive parents," the Legislature has implicitly included the requirement for an analysis by the Department of Health and Human Resources and circuit courts of the best interests of the child, given all circumstances of the case.

[5]*See In re Clifford K.*, 217 W.Va. 625, 619 S.E.2d 138 (2005) (recognizing that psychological parent "may be biological, adoptive, or foster parent, or any other person" who meets certain criteria). Notwithstanding petitioner's claim, the record on appeal contains no order granting petitioner status as a psychological parent. Further, we have held that designation as a psychological parent does not mandate an award of child custody. *See In re N.A.*, 227 W.Va. 458, 469, 711 S.E.2d 280, 291 (2011) (stating that "[s]imply because a person is found to be a child's psychological parent, however, does not translate into the psychological parent getting custody of the child").

4

decision to grant continued visitation; however, the child requested to end his visits with petitioner early and also had a bond with his foster mother. Given the circumstances of this case, we find no error in the circuit court's ruling that it was not in the child's best interests to be placed in petitioner's custody.

For the foregoing reasons, we find no error in the circuit court's November 19, 2015, order, and we hereby affirm the same.

Affirmed.

**ISSUED**: June 6, 2016

**CONCURRED IN BY**:

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II