# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **D.S., K.S., and J.S.**

**No. 21-0995** (Kanawha County 21-JA-148, 21-JA-149, and 21-JA-150)

## MEMORANDUM DECISION

Petitioner Grandmother T.S., by counsel Matthew A. Victor, appeals the Circuit Court of Kanawha County's November 16, 2021, order denying her motion to intervene for permanent placement of D.S., K.S., and J.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and James Wegman, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Matthew Smith, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motion to intervene in the abuse and neglect proceedings.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The proceedings below began upon the filing of a child abuse and neglect petition that is not included in the appendix record on appeal. According to the record, this petition named the parents of D.S., K.S., and J.S. as abusing and neglectful parents, and the children as abused and neglected children. Petitioner is the paternal grandmother of D.S. and K.S. and claimed status as a psychological grandparent of J.S. After the abuse case was initiated against the parents, the children were temporarily placed with petitioner. However, after petitioner allowed the mother to have unsupervised contact with the children and refused to allow court-ordered visitation between J.S. and his father, the DHHR removed the children from petitioner's home.

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

In August of 2021, petitioner filed a motion to intervene in the proceedings. The circuit court held a hearing on petitioner's motion the following month. At the hearing, petitioner explained that she was seeking party status based on her blood relation to D.S. and K.S. and emotional connection to all three children. Petitioner also requested an explanation as to the removal of the children from her custody. Petitioner's counsel claimed during the hearing that petitioner had "for all practical purposes, raised these children, [and] had prolong[ed] physical custody" for "two, three days a week, [and] weekends." Petitioner's counsel went on to note that petitioner "was the only person who was considered a temporary and permanent placement" for the children once the abuse petition was filed against the parents. Petitioner's counsel acknowledged that, even if the court denied petitioner's motion to intervene, she "still reserve[d] the right to file a separate motion for custody and placement." The court inquired why petitioner never sought guardianship of the children. Petitioner's counsel replied that petitioner "never understood the process of the guardianship." However, the court noted that "[a]ccording to the [child abuse] petition, she said that she didn't want to interfere with the children's relationship with their mother, who they love dearly, nothing about being [un]familiar with the appropriate procedures to follow as it relates to guardianship." After this inquiry, petitioner's counsel acknowledged that "any guardianship would [not] have been necessary, because the children were still in the parents' custody."

Next, the DHHR proffered that the children were removed from petitioner's home because she allowed the mother to have unsupervised visitation with the children. The DHHR explained that this was in violation of a prior circuit court order that prohibited the mother from having unsupervised visitation. The DHHR noted that the mother had screened positive for methamphetamine shortly after at least one unsupervised visit with the children. The DHHR explained to the court that it was concerned that petitioner placed the mother's needs over the needs of the children and that it should deny petitioner's motion to intervene as premature and because she "already had custody and she squandered that opportunity because she could [not] follow the rules."

Finally, the guardian also reported that J.S. was previously removed from petitioner's home because petitioner refused to allow a court ordered visitation with the father. The guardian noted that a Child Protective Services ("CPS") worker came to petitioner's home on an unscheduled workday to remove the child from petitioner's home as a result. After hearing this evidence, the court determined that petitioner's motion to intervene was premature because the case was still in the adjudicatory phase. Nevertheless, the circuit court decided the motion "on its substance, because I have concerns that [petitioner] has not been respectful of court orders as it relates to the visitation in these proceedings." The court further found that petitioner's actions were an "impediment to this process and certainly not in the best interests of her grandchildren."

Petitioner filed a renewed motion to intervene in October of 2021, arguing that she had a role in raising the children and claiming the court's decision to remove the children from her custody damaged the children. The court issued an order denying petitioner's renewed motion to

intervene in November of 2021. Petitioner appeals the circuit court's November 16, 2021, order denying her permanent placement of the children.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying her motion to intervene in the proceedings below. According to petitioner, she was a caregiver of the children and, as such, was entitled to notice of the proceedings and the right to be heard. She further argues that "[e]ven if [she] unintentionally failed to comply" with the court's orders regarding no contact with the mother or allowing J.S. to participate in visitation with the father, "her perceived transgression could not have been of such magnitude as to deprive her of any contact with her grandchildren." We find no merit to petitioner's argument.

Petitioner's involvement in the proceedings is governed by West Virginia Code § 49-4-601(h), which establishes a "two-tiered framework" of the parties who enjoy the procedural due process right of a meaningful opportunity to be heard. *State ex rel. H.S. v. Beane*, 240 W. Va. 643, 647, 814 S.E.2d 660, 664 (2018). Specifically, parties having "custodial or other parental rights or responsibilities" are entitled to both "a meaningful opportunity to be heard" and "the opportunity to testify and to present and cross-examine witnesses." W. Va. Code § 49-4-601(h). Further, we have explained that "[a] person 'who obtains physical custody after the initiation of abuse and neglect proceedings—such as a foster parent—does not enjoy the same statutory right of participation as is extended to parents and pre-petition custodians.'" *Beane*, 240 W. Va. at 648, 814 S.E.2d at 665 (quoting *State ex rel. R.H. v. Bloom*, No. 17-0002, 2017 WL 1788946 at *3 (W. Va. May 5, 2017)(memorandum decision)) (emphasis added). These individuals—foster parents, pre-adoptive parents, and relative caregivers—are entitled to a meaningful opportunity to be heard only and are not entitled to an opportunity to testify and present and cross-examine witnesses. W. Va. Code § 49-4-601(h).

---

[2]The parents' parental rights were terminated below. The children were placed in a foster home, and the permanency plan for the children is adoption by the foster family.

Further, West Virginia Code § 49-4-114(a)(3), "[t]he [grandparent preference] statute contemplates that placement with grandparents is presumptively in the best interests of the child, and the preference for grandparent placement may be overcome only where the record reviewed in its entirety establishes that such placement is not in the best interests of the child." Syl. Pt. 2, in part, *In re Elizabeth F.*, 225 W. Va. 780, 696 S.E.2d 296 (2010) (citation omitted).

On appeal, petitioner argues that she spent years "acting as a foster parent, physical custodian, biological grandparent, and psychological grandparent [of J.S.]" and she should have been provided notice of the proceedings and an opportunity to be heard from the outset of the case. However, petitioner cannot be classified as any of those individuals listed above who are entitled to participation rights in a child abuse and neglect case. While petitioner contends, in part, that her status as a grandparent entitled her to placement of the children, this Court has noted that "[t]he preference is just that—a preference. It is not absolute . . . the child's best interest remains paramount." *In re K.E.,* 240 W. Va. 220, 225, 809 S.E.2d 531, 536 (2018). Simply stated, "[t]he grandparent preference must be considered in conjunction with our long[-]standing jurisprudence that 'the primary goal in cases involving abuse and neglect . . . must be the health and welfare of the children.'" *In re Hunter H.*, 227 W. Va. 699, 703, 715 S.E.2d 397, 401 (2011) (citation omitted).

The record is clear that the children were removed from their parents' care and placed with the petitioner temporarily. Aside from her own self-serving statements, petitioner failed to present any evidence that she was a pre-petition custodian. Indeed, during a hearing on petitioner's motion to intervene, the circuit court questioned petitioner's counsel as to why petitioner did not file for guardianship proceedings at any point during the many years she claims to have primarily cared for the children. Petitioner's counsel stated that petitioner was unfamiliar with the legal process. However, the court noted that petitioner had previously stated that she did not wish to interfere with the children's relationship with the mother. This evidence belies petitioner's claims that she was simply unfamiliar with the guardianship process.

Further, petitioner allowed the mother, who was subject to a no contact order, to visit the children. From this, coupled with the evidence of petitioner's lack of cooperation with the DHHR in facilitating visitation with J.S.'s father, it is clear that the DHHR's concerns that petitioner would not comply with court orders while the children were in her care were valid. Also, due to the mother's ongoing substance abuse, the DHHR did not believe that petitioner would be able to protect the children if she allowed visitation in violation of the court's orders. Indeed, the mother tested positive for methamphetamine shortly after petitioner allowed her to have contact with the children. Additionally, petitioner suffered no prejudice because the court carefully considered her motions to intervene in the proceedings and conducted multiple evidentiary hearings regarding the children's placement and permanency. Given the foregoing, we find that the circuit court did not err in denying petitioner's motion to intervene.

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 16, 2021, order is hereby affirmed.

Affirmed.

4

**ISSUED**: May 12, 2022


**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn